# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD COLTON MCABEE, *Plaintiff*, v. CRYSTAL LANCASTER, *et al.*, *Defendants*. | 24-cv-01686 (JMC) |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants Crystal Lancaster and the District of Columbia (the District) respectfully move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A memorandum of points and authorities in support of this motion and a proposed order are attached for the Court's consideration.

Dated: August 12, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Zita Orji*
ZITA ORJI [1740117]
JAROD C. WILSON [90019386]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 769-6181
zita.orji1@dc.gov
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RONALD COLTON MCABEE,<br><br>*Plaintiff*,<br><br>v.<br><br>CRYSTAL LANCASTER, *et al.*,<br><br>*Defendants*. | 24-cv-01686 (JMC) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION

Defendants Crystal Lancaster and the District of Columbia (the District) submit this memorandum of points and authorities in support of their motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  Plaintiff brings claims under 42 U.S.C. § 1983, for alleged violations of the Fourth and Fifth Amendments.  Because Plaintiff has failed to plead any valid claims against Defendants, the Court should dismiss the Complaint.

### FACTS

Plaintiff filed the Complaint on June 11, 2024, against the District and former District of Columbia Department of Corrections (DOC) correctional officer Crystal Lancaster.  *See* Compl. He alleges that "[o]n September 5, 2022, while detained at the DC Jail, Defendant Lancaster entered his unit, Unit C2B, with her body-worn camera activated, to conduct a routine security check."  *Id.* ¶ 9.  Shortly thereafter, a nurse entered Unit C2B for the "routine purpose of dispensing medication to inmates."  *Id.* ¶ 10.  Plaintiff claims he was not wearing a COVID-19 face mask at that time because inmates were required "to remove any face mask while consuming such medication . . . "  *Id.* ¶ 11.  He alleges that Defendant Lancaster then

"approach[ed] and yelled at him to put a mask on." *Id*. ¶ 12. Despite this, Plaintiff informed Defendant Lancaster that he was "simply getting his medication" and continued to advance to the nurse. *Id*. ¶ 13. Defendant Lancaster allegedly then approached Plaintiff and pitted him between her and a chair. *Id*. ¶¶ 14–15. Plaintiff moved past Defendant Lancaster. *Id*. ¶ 15.

Defendant Lancaster issued another verbal command to Plaintiff and ordered him to return to his cell, and once again moved in between him and the nurse. *Id*. ¶ 16. Plaintiff, ignoring Defendant Lancaster's command, repeated his intent to receive medication. *Id*. ¶ 17. Plaintiff alleges that Defendant Lancaster once more commanded him to return to his cell and then administered a "one-second burst of chemical agent directly to [his] face . . . ." *Id*. ¶ 18. Plaintiff claims Defendant Lancaster then called for backup and Corporal Agbornike and Corporal Winston arrived to restrain him. *Id*. ¶¶ 23–24. Plaintiff then alleges as a "reasonable self-defense maneuver," he extended his foot toward the wall in front of him. *Id*. ¶ 26. Plaintiff claims Defendant Lancaster administered a second burst of chemical agent in his face. *Id*. ¶ 27.

Plaintiff alleges that "[a]s a result of Defendant Lancaster's actions . . . [he] suffers continued physical and emotional trauma," and "[w]henever [he] hears anything about COVID-19 masks, his heart races, his hands sweat, and he fears that he will be violently assaulted by an officer . . . ." *Id*. ¶ 33. Plaintiff requests compensatory and punitive damages and attorney's fees. *Id*. at 10.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

2

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  While the Court must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).  Also, the Court need not accept "legal conclusions cast as factual allegations" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint . . . ."  *Hettinga*, 677 F.3d at 476.  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

### I. <u>Plaintiff's Fifth Amendment Claims Fails.</u>

Plaintiff brings a Fifth Amendment claim against Defendants based on the same conduct that underlies his Fourth Amendment claim.  *See* Compl. ¶¶ 51–59.  This Plaintiff cannot do. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a claim."  *Abdelfattah v. U.S.*

3

*Dep't of Homeland Sec.*, 787 F.3d 524, 541 (D.C. Cir. 2015) (citation and internal quotation marks omitted). In other words, a plaintiff may make a Fifth Amendment substantive due process claim only if the claim is not "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Relevant here, where a Fifth Amendment claim is based on excessive force, it will merge with a more specific Fourth Amendment claim. *See Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 36 (D.D.C. 2010).

The precise basis for Plaintiff's Fifth Amendment claim is unclear, but it is based on the same alleged conduct as his Fourth Amendment claim. Plaintiff's Fifth Amendment claim against Defendant Lancaster is based on her "use of chemical agent spray," which is also the factual basis of his Fourth Amendment excessive force claim. *See* Compl. ¶¶ 53–55. And against the District, Plaintiff pleads the two claims in the very same count. *See id*. ¶¶ 57–59. Because the conduct complained of is "covered by a specific constitutional provision," the Fifth Amendment claim should merge with the Fourth Amendment claim. *Lewis*, 523 U.S. at 840. And because Plaintiff's Fourth Amendment claim fails for the reasons explained below, the Court should dismiss the Fifth Amendment claim.

II. **The Court Should Dismiss Plaintiff's Section 1983 Claim Against the District for Failure to Allege Municipal Liability (Count III).**

Plaintiff fails to allege any facts necessary to establish municipal liability under 42 U.S.C. § 1983. Therefore, Plaintiff's Section 1983 claim against the District (Count III) should be dismissed.

Municipal liability under § 1983 does not allow for *respondeat superior* liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). As explained in *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees

4

or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Thus, to proceed against a municipality under § 1983, the plaintiff must identify a municipal policy, custom, or practice that caused the plaintiff's alleged constitutional injury. *See Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010).

To hold the District liable for constitutional violations, Plaintiff must allege facts showing (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see also Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014). To show a municipal custom, pattern, or practice, a plaintiff must point to "specific incidents that plausibly show a custom or pattern of behavior." *Wells v. Hense*, 235 F. Supp. 3d 1, 12 (D.D.C. 2017) (quoting *Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 87 (D.D.C. 2016)). The Supreme Court has instructed that "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). In other words, the municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury. *Monell*, 436 U.S. at 658.

Here, Plaintiff falls short of his burden under this standard, as none of the allegations identified by Plaintiff support municipal liability under § 1983. *See* Compl. ¶¶ 57–59. Instead,

5

Plaintiff makes general, non-specific, conclusory allegations about the District's purported municipal liability. *See id*. For example, without providing any specifics, Plaintiff claims the District had a policy or custom to use "chemical agents in violation of both [the] Fourth and Fifth Amendments." *Id*. ¶ 57. Conclusory allegations are insufficient to support a claim of municipal liability. *See Martin v. District of Columbia*, 720 F. Supp. 2d 19, 23 (D.D.C. 2010) ("Plaintiff's conclusory statements—unsupported by additional factual allegations—are simply insufficient to state a claim under § 1983 against the District."). Plaintiff merely alleges a policy exists; not once does Plaintiff identify the specific policy or custom that requires the use of chemical agents in violation of a person's constitutional rights or any specifics related to such policy. Without providing any details, Plaintiff alleges that the District was aware of DOC's policy but showed deliberate indifference "to the risk that failure to train DOC employees would result in constitutional violations." Compl. ¶ 57. But Plaintiff has pleaded no facts showing how the District's training of its DOC employees on the appropriate way to use chemical agents was improper, nor does Plaintiff allege that the District had any knowledge of a need to act and was deliberately indifferent to the risk of not addressing it. *See id*.

What is more, Plaintiff fails to show pervasiveness sufficient to establish municipal liability. *See Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C.Cir.1986). "To clear this high hurdle [to show municipal liability], plaintiffs ordinarily couch 'custom or practice' liability on allegations of 'practices so persistent and widespread as to practically have the force of law.'" *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). The Complaint fails to clear this high hurdle. Plaintiff does not identify when this supposed policy was enacted or how long the policy was in effect before the alleged incident. *See* Compl. ¶¶ 57–59. And Plaintiff's allegation of this one incident is insufficient to

establish pervasiveness.  *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989)("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . .").

Lastly, Plaintiff's attempts to establish municipal liability via a policymaker theory also falter.  *See* Compl. ¶ 57 ("Such policy or custom exists either expressly or as the result of the District of Columbia policymakers' knowing failure to prohibit the unjustified use of chemical agents at point blank range . . .").  To be considered a policy maker, an individual must "speak with final policymaking authority," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), and "typically must be at least an agency head or the governing body of an agency," *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011).  The analysis does not hinge on whether an employee was simply in a leadership position, but rather on whether "the D.C. Code specifically grants authority to [the alleged policy maker] to promulgate administrative rules or . . . policies and procedures" and whether the official's "discretionary decisions are constrained by policies, not of that official's making." *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011).

Here, Plaintiff does not identify any final policymaker of the District that took actions to cause his injury.  Again, Plaintiff makes conclusory allegations that the District's policymakers failed to prohibit "the unjustified use of chemicals at point-blank range," Compl. ¶ 57, but does not identify who the District's policymakers were, whether the policymakers were aware of the alleged constitutional violation and failed to act on it, or how their failure to act resulted in Plaintiff's injuries.  Nor does Plaintiff demonstrate how the District's policymakers were involved in or took any individual action related to his injury.  Therefore, Plaintiff's § 1983 claim alleging facts that are "merely consistent with" the District's liability under a policymaking

7

theory "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

Because Plaintiff's allegations do not state a plausible municipal liability claim against the District, the Court should dismiss Plaintiff's Fourth and Fifth Amendment claims against the District.

### III.     Plaintiff's Excessive Force Claim Against Defendant Lancaster Fails.

Plaintiff's § 1983 claims against Defendant Lancaster fail because her use of force was objectively reasonable under the circumstances, or in the alternative, she is entitled to qualified immunity. Accordingly, the Court should dismiss the Complaint.

#### A.     Defendant Lancaster's Use of Force Was Objectively Reasonable.

A Fourth Amendment violation occurs when the force used . . . is "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "[W]hatever the circumstances prompting law enforcement officers to use force, whether it be self-defense, defense of another or resistance to arrest, where, as here, a Fourth Amendment violation is alleged, the inquiry remains whether the force applied was reasonable." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993). "The calculus of reasonableness must embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Thus, "the 'reasonableness' inquiry in an excessive force

case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *Id.* at 397 (citations omitted).

Here, Defendant Lancaster confronted the following circumstances before using a chemical spray against Plaintiff: (1) Plaintiff had ignored Lancaster's verbal commands *three times* before she deployed a one-second burst of chemical agent, *see* Compl. ¶¶ 12–17; and (2) Lancaster then called for backup, and when the two officers attempted to handcuff Plaintiff, he resisted, which led to Lancaster administering a second burst of chemical agent to restrain him, *id*. ¶¶ 26–27. Under the pleaded facts and circumstances, Lancaster's use of force—one burst of chemical agent to Plaintiff's face after he repeatedly defied her verbal commands, and another after he resisted being restrained by two other officers—falls within the spectrum of objective reasonableness. Courts have routinely held that the use of force—and even greater degrees of force—was reasonable when the individuals failed to comply with the officers' commands and resisted arrest. *See, e.g.*, *Cutchin v. District of Columbia*, 369 F. Supp. 3d 108, 126 (D.D.C. 2019) (officers' use of force in tackling or grabbing from behind arrestee who had disobeyed officers' commands after he attempted to flee was reasonable under the Fourth Amendment); *Oberwetter v. Hilliard*, 639 F.3d 545, 555–56 (D.C. Cir. 2011) (holding that excessive force was not used when officer shoved uncooperative plaintiff and twisted her arm after she twice refused officer's orders to stop dancing at the Jefferson Memorial late at night amid a large group of other dancers); *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (holding that excessive force was not used where the plaintiff was forcibly handcuffed after refusing officer's orders to stop). Plaintiff repeatedly ignored Lancaster's verbal commands and then resisted being restrained by extending out his foot on to the wall. Lancaster's use of chemical spray to Plaintiff's face to obtain compliance after Plaintiff—by his own admission—defied orders from

9

correctional officers was not excessive because Plaintiff was noncompliant, uncooperative, and resistant. *See Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 88 (D.D.C. 2015) ("Review of other excessive force cases resolved in favor of police officers in this jurisdiction confirms that the officers' use of force . . . when [plaintiff] was noncompliant with commands and appeared to be resisting arrest, was not excessive."). Thus, Defendant Lancaster's use of force was not unreasonable and did not amount to a violation of the Fourth Amendment. Accordingly, the Court should dismiss the Complaint.

      **B.**       <u>**Defendant Lancaster Is Entitled to Qualified Immunity.**</u>

Alternatively, Defendant Lancaster is entitled to qualified immunity, because it was not clearly established that the level of force she used to subdue Plaintiff under the circumstances she confronted amounted to a Fourth Amendment violation.

A defendant bears the burden of raising the defense of qualified immunity in response to a claim brought under § 1983, *see Crawford–El v. Britton*, 523 U.S. 574, 587 (1998), and once the defense is asserted, "the burden of proof then falls to the plaintiff to show that the official is not entitled to qualified immunity," *Winder v. Erste*, 905 F. Supp. 2d 19, 28 (D.D.C. 2012) (citation omitted); *see also Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). It is well settled that government officials enjoy qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *see also Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). The doctrine of qualified immunity shields an officer from liability for alleged excessive force, insofar as the officer's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is

effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, courts have "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Under the qualified immunity doctrine, courts may not award damages against a government official in her personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Clearly established" means that, at the time of the employee's conduct, the law was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations and quotations omitted). This "demanding standard" contemplates that "existing law must have placed the constitutionality of the [employee's] conduct beyond debate" and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). To be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent" and must be "settled law." *Id.* The rule must be "dictated," and not just suggested, by "'controlling authority' or a robust 'consensus of cases of persuasive authority.'" *Id.* at 589-90 (quoting *al-Kidd*, 563 U.S. at 741–42).

The "'clearly established' standard also requires that the legal principle clearly prohibit the [employee's] conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. This requires a "high degree of specificity," *i.e.*, the rule's contours must be so well defined that it is "clear to a reasonable [employee] that his conduct was unlawful in the situation he confronted." *Id.* "To delineate the body of governing law that a reasonable officer should have been aware of, [courts] look[] to cases from the Supreme Court and the D.C. Circuit, as well as

11

to cases from other courts exhibiting a consensus view." *Kyle v. Bedlion,* 177 F. Supp. 3d 380, 385 (D.D.C. 2016); *but see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (noting that neither plaintiff nor Circuit Court of Appeals had identified any Supreme Court case addressing facts like the ones at issue and suggesting that only Supreme Court precedent can clearly establish law for purposes of § 1983 qualified immunity analysis). Thus, "to show a violation of clearly established law, [a plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8; *see also City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 12 (2021) (reversing denial of qualified immunity where neither "the panel majority nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances").

Finally, the Supreme Court has emphasized the importance of factual context in deciding qualified immunity in Fourth Amendment excessive force cases:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent *squarely governs the specific facts at issue*. Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful. . . . An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)) (emphasis added). Thus, even if Plaintiff manages to show that Defendant Lancaster's conduct was objectively unreasonable under the Fourth Amendment, the

12

qualified immunity standard "adds a *second* layer of protection against officer liability." *Kyle*, 177 F. Supp. 3d at 393. "That is, in addition to showing that the facts (construed in her favor) demonstrate an objectively unreasonable seizure, [Plaintiff] must also show, in effect, that it was so clear under then-existing law that the seizure constituted a Fourth Amendment violation that only an officer who was 'plainly incompetent' or 'knowingly violat[ing] the law' would have effected it." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2085) (citation and internal quotation marks omitted).

Here, it was not clearly established that Defendant Lancaster's use of two separate bursts of chemical spray to subdue and bring Plaintiff in compliance after he had ignored her verbal commands three times and physically resisted being restrained was unlawful under the Fourth Amendment. There was no Supreme Court or D.C. Circuit precedent at the time of her actions that held that the use of pepper spray on an uncooperative and resistant prisoner was a constitutional violation. Indeed, courts have held that the deployment of pepper spray becomes unreasonable when directed at an individual who is *restrained* and *compliant*. *See Wilkins v. District of Columbia*, No. 17-CV-884 (CKK), 2020 WL 5816591, at *12 (D.D.C. Sept. 30, 2020) (citing *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020)). Plaintiff was neither compliant nor restrained. *See* Compl. ¶¶ 12–23, 26–27. Thus, it was not clearly established at the time of Defendant Lancaster's actions that the use of pepper in the circumstances she confronted violated Plaintiff's constitutional rights. Accordingly, Defendant Lancaster is entitled to qualified immunity, and the Court should, as a result, dismiss the Complaint against Defendant Lancaster (Counts I and II).

## CONCLUSION

For these reasons, the Court should grant this motion and dismiss the Complaint with prejudice.

Dated:  August 12, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Zita Orji*
ZITA ORJI [1740117]
JAROD C. WILSON [90019386]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 769-6181
zita.orji1@dc.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD COLTON MCABEE, *Plaintiff*, v. CRYSTAL LANCASTER, *et al.*, *Defendants*. | 24-cv-01686 |

### ORDER

Upon consideration of Defendants' Motion to Dismiss the Complaint, any opposition and reply thereto, and the entire record herein, it is by the Court this _____ day of _____ 2024, hereby

**ORDERED** that Defendants' Motion is **GRANTED**; and it is further

**ORDERED** that the Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

_____
JIA M. COBB
United States District Judge

Copies to:
Kyle Singhal
*Counsel for Plaintiff*

Zita Orji
Jarod C. Wilson
Assistant Attorneys General
*Counsel for Defendant District of Columbia*