UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD COLTON MCABEE**, | § |
| | §   No. 24-cv-01686 (JMC) |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| **CRYSTAL LANCASTER**, | § |
| | § |
| and | § |
| | § |
| **DISTRICT OF COLUMBIA**, | § |
| | § |
| Defendants. | § |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

At the motion-to-dismiss stage, this Court must take "all the facts alleged [in the complaint] as true." *Maljack Prods. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995). Defendants correctly explain that the Court must draw all reasonable inferences in Plaintiff's favor and that the Court must deny the motion to dismiss if Plaintiff's complaint states a plausible claim for relief. *See* Mot. to Dismiss, ECF No. 13, at 3. Applying that standard, this Court should deny the motion to dismiss, order Defendants to answer Plaintiff's complaint, and thereby permit this matter to proceed to discovery. In the sections that follow, Plaintiff addresses Defendants' arguments in the same order as they appear in the motion to dismiss.

**Plaintiff's Fifth Amendment Claim (Count II)**

In *Bell v. Wolfish*, 441 U.S. 520, 539 (1979), the Supreme Court discussed a pretrial detainee's Fifth Amendment right to be free from punishment, explaining that

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless, a court permissibly may infer

1

> that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility. *Cf. United States v. Lovasco*, 431 U.S. 783, 790 (1977); *United States v. Russell*, 411 U.S. 423, 435 (1973).

*Bell*, 441 U.S. at 539 (some citations omitted). *Bell* further held that practices that "appear excessive in relation to" an offered "legitimate nonpunitive governmental purpose" violate the Fifth Amendment. *Id.* at 561. The upshot is that it is unconstitutional for a jailer to "punish" a pretrial detainee, and this Court may reasonably infer that a jailer's actions taken against a pretrial detainee, if not reasonably related to a legitimate governmental objective in both purpose *and* scope, amount to such unconstitutional punishment. *Id.*

The Supreme Court clarified in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), that the standard for evaluating unconstitutional punishment of a pretrial detainee is objective rather than subjective. 576 U.S. at 399. The Supreme Court has also indicated that *Bell* itself involved a substantive, rather than procedural, due process claim (in *Bell*, the plaintiffs were a class who challenged numerous conditions of confinement generally). *See United States v. Salerno*, 481 U.S. 739, 746 (1987). But lower courts have routinely applied *Bell* to both substantive due process claims (that is, to claims that a jail's practice is the *kind* of practice that cannot permissibly be applied to a pretrial detainee) and to procedural due process claims (that is, to claims that a jail failed to provide adequate notice and an opportunity to be heard prior to imposing a restriction or condition of confinement). *See, e.g.*, *Dilworth v. Adams*, 841 F.3d 246, 251-53 (4th Cir. 2016) (applying *Bell* to procedural due process claim); *Ford v. Bender*, 768 F.3d 15, 24-27 (1st Cir. 2014) (distinguishing types of due process claims); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. 2005) (applying *Bell* to substantive due process claim).

Here, Plaintiff's Fifth Amendment claim has both a substantive due process component (*i.e.*, that pepper spraying a pretrial detainee at point-blank range, twice, apparently for no other reason than for failing to wear a face mask, is not reasonably related to any legitimate nonpunitive purpose and thus amounts to impermissible punishment) *and* a procedural due process component (*i.e.*, Defendants failed to provide any notice of the pepper spray prior to spraying it, twice, into Plaintiff's face). Viewed either way, Plaintiff's complaint alleges sufficient facts to meet Plaintiff's burden at the pleading stage as to his Fifth Amendment claim.

Defendants cite *Abdelfattah v. United States Dep't of Homeland Sec.*, 787 F.3d 524 (D.C. Cir. 2015), for the proposition that the Fourth Amendment, rather than "the more generalized notion of substantive due process, must be the guide for analyzing" Plaintiff's claim. 787 F.3d at 541 (cleaned up); Mot. to Dismiss, ECF No. 13, at 4-5. But the D.C. Circuit there was referring to an illegal-seizure claim that violated only the plaintiff's Fourth Amendment rights: the plaintiff simply sought to bring the same claim a second way, *i.e.*, by labeling it a due process claim. *Id.* So the Circuit held that when the more specific provision, rather than the more general provision, should govern the claim. *Id.* Here, in contrast, Plaintiff has two distinct claims: (1) Plaintiff's excessive-force claim asserts a Fourth Amendment violation, and (2) Plaintiff's unlawful-punishment claim asserts a Fifth Amendment violation that exists *even if* the ultimate factfinder concludes that there was no Fourth Amendment violation. This Court can reasonably infer that Lancaster was punishing Plaintiff for not wearing a face mask, that she did so by pepper-spraying him in the face, and that she arbitrarily chose to use pepper spray rather than, for instance, pursuing a nonviolent approach such as writing up a disciplinary report against Plaintiff for the infraction of failing to wear a face mask. Regardless of whether Lancaster's conduct in using pepper spray amounts to excessive force under the Fourth Amendment, that conduct, if it was punitive and if it

3

was unrelated to (or excessive in relation to) a legitimate non-punitive purpose, violates Plaintiff's Fifth Amendment right, as a pretrial detainee, to be free from unlawful punishment. *See Bell*, 441 U.S. at 539.

Defendants' reliance on *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998), is also misplaced. *See* Mot. to Dismiss, ECF No. 13, at 4-5. *Lewis* held that substantive due process was in fact the appropriate analysis to govern a § 1983 claim arising from the death of a suspect who led officers on a high-speed automobile chase. 523 U.S. at 843. Because the officers had not actually searched or seized the suspect being chased, there was not (yet) a Fourth Amendment search or seizure. *Id.* Thus the Court properly proceeded to a substantive due process analysis, ultimately concluding that there was insufficient evidence to support liability in the context of a high-speed automobile chase. *Id.* at 843-55. If anything, that supports Plaintiff's reasoning, *supra*, that even if there is no ultimate finding of Fourth Amendment excessive force here, it would still then be appropriate to evaluate whether Defendants violated Plaintiff's Fifth Amendment due process right to be free from unlawful punishment.

Finally, Defendants argue that Lancaster's use of chemical spray *did* serve a legitimate objective: that is, that it furthered the District's "legitimate interest in the proper 'order,' 'discipline,' and 'institutional security' of the jail." Mot. to Dismiss, ECF No. 13, at 6. Defendants appear to view unannounced pepper-spraying as somehow analogous to the routine use of handcuffs even though the use of pepper spray is, thankfully, far from routine. *Id.* at 5; *see Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1128 (9th Cir. 2002) (lambasting the "entirely unprecedented" use of pepper spray rather than peaceful means to arrest environmentalist protestors). But even if pepper spraying inmates may sometimes serve a legitimate institutional interest (such as, for instance, in suppressing a violent riot), it was *clearly*

4

"excessive in relation to" any fathomable interest here, *Bell*, 441 U.S. at 561, on the facts alleged in the amended complaint. At the very least, it was a procedural due process violation to deploy the pepper spray with no warning: Defendants appear to justify Lancaster's actions on the grounds that Plaintiff "ignored Defendant Lancaster's commands to put on a face mask and return to his cell," but Defendants ignore the fact that Lancaster never warned Plaintiff that she would *pepper spray* him if he proceeded to obtain his medication without wearing a face mask. Mot. to Dismiss, ECF No. 13, at 6.

Because Plaintiff's Fifth Amendment claim does not depend upon the same legal theory or factual findings as his Fourth Amendment excessive-force claim, and because Lancaster's actions were excessive in relation to any legitimate nonpunitive interest, this Court should deny the motion to dismiss as to Count II.

### Plaintiff's *Monell* Claim (Count III)

Defendants correctly assert that § 1983 does not permit municipal liability under a theory of *respondeat superior*. Mot. to Dismiss, ECF No. 13, at 7. That is precisely why Plaintiff's claim for municipal liability was presented as "a *Monell* claim, not a claim for *respondeat superior* liability." Am. Compl. ¶ 64; *see Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

As Defendants acknowledge, the D.C. Circuit has articulated at least four ways in which the District of Columbia may be held liable for an unconstitutional policy or custom under *Monell*:

(1) "the explicit setting of a policy by the government that violates the Constitution";

(2) "the action of a policy maker within the government";

(3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'"; or

5

(4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Defendants incorrectly assert, however, that Plaintiff "***must*** point to 'specific incidents that plausibly show a custom or pattern of behavior.'" Mot. to Dismiss, ECF No. 13, at 8 (emphasis added). While that is ***one way*** in which Plaintiff could plead a *Monell* claim, it is by no means a requirement. Plaintiff need not even specify which of the four *Monell* theories listed above is applicable: rather, "if a complaint alleging municipal liability under § 1983 may be read in a way that can support a claim for relief, thereby giving the defendant fair notice of the claim, that is sufficient." *Baker*, 326 F.3d at 1307 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). That makes sense because it is only through discovery that Plaintiff can reasonably be expected to discern the precise contours of what may be an unstated but widespread custom of permitting jailers to use pepper spray against inmates who are neither rioting nor engaged in physically threatening behavior. *See Norris v. District of Columbia*, 737 F.2d 1148, 1152 (D.C. Cir. 1984) (reversing dismissal of excessive-force claim and companion municipal-liability claim so that plaintiff could "be afforded an opportunity on remand to engage in reasonable discovery directed towards proving his allegations that the District has 'failed adequately to supervise, train, instruct and control correctional officers at the [D.C. Jail] in the use of mace'").

Nevertheless, Plaintiff *has* pointed to specific incidents from which this Court can infer that the District knowingly failed to train its jailers in the proper use of pepper spray. Am. Compl. ¶ 65. The allegations in *Quander* were that the District's jailers deployed pepper spray into an

inmate's cell *before even entering* it, and that they did so only in response to a complaint that the inmate was smoking. Am. Compl. ¶ 41. And the allegations in Plaintiff's own complaint support an inference that Lancaster was acting in a way that she believed was consistent with jail policy: the fact that Lancaster wrote up a disciplinary report against Plaintiff knowing that her actions were captured on video (*i.e.*, captured on video that could be used in assessing the disciplinary report) supports the inference that she believed that her use of pepper spray was in fact permissible, which in turn implies the existence of a policy or custom permitting such use. Am. Compl. ¶¶ 35-36.

Because Plaintiff has pleaded sufficient facts to support an inference that District policy or custom was the "moving force" behind Lancaster's use of pepper spray, the Court should deny the motion to dismiss as to Count III. *Monell*, 436 U.S. at 658.

### Plaintiff's Excessive Force Claim (Count I)

Defendants move to dismiss Count I for two reasons: (1) Lancaster's use of pepper spray was objectively reasonable, Mot. to Dismiss, ECF No. 13, at 11-13; and (2) qualified immunity shields Lancaster from liability, *id.* at 13-17. Both arguments fail.

*First*, Lancaster's use of pepper spray was objectively unreasonable because Plaintiff was uneventfully walking to a medication cart to retrieve routine medication from a nurse and was not engaged in any physically threatening behavior when Lancaster first sprayed him. Am. Compl. ¶¶ 10-18. Nor was Plaintiff engaging in any physically threatening behavior when Lancaster sprayed him the second time: viewing the facts as Plaintiff has alleged them, Plaintiff was being hauled away by two other officers with his hands behind his back and his foot extended towards a wall (*i.e.*, *not* resisting) when she sprayed him again. Am. Compl. ¶¶ 25-29.

Defendants cite four cases for their proposition that courts "routinely" uphold this sort of use of force as objectively reasonable, but none of those cases are applicable here. Mot. to Dismiss, ECF No. 13, at 12-13. In *Cutchin v. District of Columbia*, 369 F. Supp. 3d 108 (D.D.C. 2019), officers used force against an *armed* suspect who "got up and just ran" from officers "with his hands still cuffed behind his back" as they attempted to arrest him for fare evasion. 369 F. Supp. 3d at 114-15. Likewise, in both *Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011), and *Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009), officers were already arresting plaintiffs for crimes. In *Oberwetter*, the plaintiff alleged that an officer "pulled her arm behind her back and pushed her up against a stone column during her arrest." 639 F.3d at 555. And in *Wasserman*, the plaintiff alleged that, in the course of a lawful arrest for violating a dog-leash law, the arresting officer "forcefully pressed upwards on Wasserman's arm before handcuffing him, causing him pain." 557 F.3d at 641; *see also id.* ("Wasserman suffered no bruise or injury, which tends to confirm that Rodacker did not use 'more force than reasonably appeared necessary' to secure Wasserman's compliance."). Finally, *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68 (D.D.C. 2015), reviewed cases involving individuals who, as Defendants acknowledge, "appeared to be resisting arrest." 134 F. Supp. 3d at 88.

None of these cases even arguably apply to Lancaster's first use of pepper spray, at which point Plaintiff was walking to the medication cart. Defendants do not argue, for instance, that Plaintiff's decision not to wear a face mask was so threatening as to somehow permit the use of force in response thereto. And even with respect to Lancaster's second use of pepper spray, Defendants substitute their own version of Plaintiff's facts in order to make the cited cases seem analogous, arguing that Plaintiff "***resisted*** by putting his foot against the wall while the officers attempted to handcuff him, which led to Lancaster administering a second burst of chemical agent

to restrain him." Mot. to Dismiss, ECF No. 13, at 12 (emphasis added); *but see* Am. Compl. ¶¶ 28-30 (explaining that Plaintiff extended his foot to avoid being slammed into a wall, that doing so did not threaten anyone, and that doing so did not "resist" any officer). Even assuming the use of pepper spray is objectively reasonable to subdue a person resisting arrest, there is then a material factual dispute about whether Plaintiff was in fact resisting Corporal Agbornkie and Corporal Winston, one that requires a jury's determination rather than dismissal at the pleading or even summary-judgment stage. *See, e.g.*, *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008) (reversing grant of summary judgment where material to an excessive force claim were in dispute); *cf. Lin v. District of Columbia*, 47 F.4th 828, 843 (D.C. Cir. 2022) (explaining that, under D.C. law, to constitute "resisting" an officer, "a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance").

Conspicuously absent from Defendants' cited authority is *Norris v. District of Columbia*, 737 F.2d 1148 (D.C. Cir. 1984). There, the D.C. Circuit held that the malicious and unprovoked use of pepper spray against an inmate at the D.C. Jail "offends the Constitution regardless of whether permanent injuries result." 737 F.2d at 1152. *Norris* alone suffices to refute Defendants' argument that the use of pepper spray here was objectively reasonable.

*Second*, as to qualified immunity, *Norris* clearly established the unconstitutionality of the malicious and unprovoked use of pepper spray more than forty years ago. *See id.* Plaintiff has amply alleged facts which, if true, establish that Lancaster knowingly and maliciously sprayed pepper spray into Plaintiff's face twice without provocation and without justification, which *Norris* clearly established to be unconstitutional. Am. Compl. ¶¶ 11-32. To find otherwise requires, at minimum, a factual determination that Plaintiff "physically resisted being restrained," Mot. to

Dismiss, ECF No. 13, at 16, to such a degree as to amount to the kind of provocation that could cause a reasonable officer to believe that pepper spray was a justifiable response. Such a finding is contrary to Plaintiff's complaint, it fails to view the facts in the light most favorable to Plaintiff, and it would have no bearing on the *first* burst of pepper spray anyhow. *See* Am. Compl. ¶¶ 28-30.

Defendants themselves concede that "the Supreme Court has emphasized the importance of factual context in deciding qualified immunity in Fourth Amendment excessive force cases." Mot. to Dismiss, ECF No. 13, at 15. The obvious next step to evaluate the "factual context" for Plaintiff's allegations, then, is to permit Plaintiff to request the video of the incident in discovery—a video that may well determine the outcome of the case at summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (declining to view facts at summary judgment in the light most favorable to the nonmoving party where the video evidence "blatantly contradicted" that version of the story and holding that the lower court "should have viewed the facts in the light depicted by the videotape"). The Court should thus deny the motion to dismiss as to Count I.

## Conclusion

For the foregoing reasons, Plaintiff respectfully submits that he has met his burden at the pleading stage. Plaintiff thus asks the Court to deny Defendants' motion to dismiss on all counts.

**Date**:  September 23, 2024                            Respectfully submitted,

/s/   Kyle Singhal
Kyle Singhal (D.C. Bar No. 1601108)
Shon Hopwood (D.C. Bar No. 1196637)
Hopwood & Singhal PLLC
1701 Pennsylvania Ave., N.W. #200
Washington, DC 20006
(817) 212-9041
kyle@hopwoodsinghal.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD COLTON MCABEE**, | § |
| Plaintiff, | § No. 24-cv-01686 (JMC) |
| vs. | § |
| **CRYSTAL LANCASTER**, | § |
| and | § |
| **DISTRICT OF COLUMBIA**, | § |
| Defendants. | § |

## ORDER

Upon consideration of Defendants' Motion to Dismiss the Amended Complaint, Plaintiff's opposition thereto, and any reply, on this _____ day of _____, 20____, this Court hereby:

**ORDERS** that Defendants' Motion be **DENIED**; and further

**ORDERS** that Defendants answer Plaintiff's Amended Complaint within fourteen days of the date of this Order.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge