UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD COLTON MCABEE,

            Plaintiff,

   v.

CRYSTAL LANCASTER, *et al.*,

            Defendants.

Case No. 24-cv-1686 (JMC)

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Lieutenant Crystal Lancaster and the District of Columbia's motion to dismiss Plaintiff Ronald McAbee's case. McAbee alleges that Lancaster violated his rights under the Fourth and Fifth Amendments of the U.S. Constitution when she sprayed him with a chemical agent while he was detained, pretrial, at the District of Columbia Central Detention Facility ("D.C. Jail").[1] ECF 11 ¶¶ 50–62. He also contends that the District is liable for Lancaster's conduct because its policies or customs were "[t]he moving force behind Lancaster's use of chemical agent." *Id.* ¶¶ 63–67.

For the reasons set out below, Defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part. McAbee plausibly alleges that Lancaster's use of force was unconstitutionally excessive, so that part of his case can proceed to discovery against Lancaster. But he fails to sufficiently allege that there was a municipal policy or practice driving Lancaster's actions. Accordingly, the Court dismisses the District as a defendant in this action.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

**I.    BACKGROUND**

The Court draws the following facts from McAbee's amended complaint. The events at issue happened on September 5, 2022, at the D.C. Jail, where McAbee was being detained pending trial. ECF 11 ¶ 8. That morning, a nurse came into his jail unit to hand out medication. *Id.* ¶ 10. McAbee approached the nurse so that he could get whatever medication the nurse had for him. *Id.* ¶ 11. This was during the COVID-19 pandemic, but he was not wearing a face mask. *Id.* According to McAbee, D.C. Jail policy required him to remove his mask while taking his medication so that the nurse could confirm he consumed it. *Id.*

Defendant Lancaster, a D.C. Jail lieutenant, saw McAbee approaching the nurse. *Id.* ¶ 12. She "yelled at him to put a mask on." *Id.* ¶ 12. By McAbee's own account, he did not follow Lancaster's order. *See id.* ¶ 13. Instead, he "replied that he was simply getting his medication." *Id.* McAbee continued to walk toward the nurse. *Id.* ¶ 14. According to McAbee, Lancaster approached him, "pitting Mr. McAbee between her and a chair." *Id.* McAbee nonetheless continued to walk past Lancaster and towards the nurse. *Id.* ¶ 15. He alleges that "Lancaster's shirt sleeve brushed [his] upper arm" as he passed her. *Id.* Lancaster then "jumped in between Mr. McAbee and the nurse, commanding Mr. McAbee to return to his cell." *Id.* ¶ 16. McAbee acknowledges that he did not comply with that directive either. Rather than go to his cell as instructed, he told Lancaster that he was going to get his medication first and that he would return to his cell after. *Id.* ¶ 17. Lancaster again ordered McAbee to return to his cell. *Id.* ¶ 18. Then "unprovoked" and without "warning to anyone," Lancaster sprayed McAbee's face "at point-blank range" with a chemical agent. *Id.* McAbee alleges that he responded to being sprayed with "impolite language," but "[a]t no point did [he] threaten, assault, or physically resist Defendant Lancaster." *Id.* ¶¶ 19, 21, 24.

Lancaster called two corporals for backup. *Id.* ¶ 25–26. She asked them to restrain McAbee. *Id.* ¶ 26. McAbee alleges that he "attempted to ask the officers to use a double handcuff restraint, rather than a single set of handcuffs, due to [his] preexisting shoulder injuries." *Id.* ¶ 27. One of the corporals then "rapidly pushed Mr. McAbee towards a wall." *Id.* ¶ 28. According to McAbee, he then extended his foot towards the wall. *Id.* He alleges that he did so only to avoid his face hitting the wall, and he claims that the extension of his foot "did not pose any physical threat" to the officers. *Id.* Then, while McAbee's hands were behind his back, "one handcuff on his left hand and the second being placed on his right hand," Lancaster allegedly approached him and sprayed a second burst of the chemical agent in his face from "mere inches away." *Id.* ¶ 29. McAbee alleges that he never "threaten[ed], assault[ed], or physically resist[ed]" the officers during this encounter. *Id.* ¶ 30.

Lancaster later wrote a disciplinary report accusing McAbee of "incit[ing] a riot and caus[ing] an assault" during their interaction. *Id.* ¶ 35. But McAbee alleges that Lancaster's allegations were false. *Id.* ¶ 36. The jail never held a disciplinary hearing on Lancaster's report—and thus never made any findings that McAbee committed the alleged violations. *Id.* ¶ 35. And, according to McAbee, prosecutors declined to bring charges against him after reviewing video footage of the incident. *Id.*

## II.  LEGAL STANDARD

In considering a Rule 12(b)(6) motion for failure to state a claim, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept as true all of the allegations contained in a complaint," but need not accept "legal conclusions" or "naked

3

assertion[s]." *Id.* (quoting *Twombly*, 550 U.S. at 557). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Additionally, so long as "the facts that give rise to the defense are clear from the face of the complaint," a Rule 12(b)(6) motion may raise affirmative defenses. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

## III.  ANALYSIS

McAbee alleges that Lancaster violated his constitutional rights when she sprayed him in his face with a chemical agent. He also seeks to hold the District liable for Lancaster's actions. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). His amended complaint alleges that Lancaster engaged in the alleged conduct pursuant to the District's express policies or customs, or "as the result of District of Columbia policymakers' knowing failure to prohibit the unjustified use of chemical agents at point-blank range, or as the result of the District['s] . . . deliberate indifference to the risk . . . that failure to train [Department of Corrections] employees" would result in constitutional violations. ECF 11 ¶ 65. Defendants move to dismiss all claims. Lancaster contends that McAbee's amended complaint does not state a claim for any constitutional violation, and that she is entitled to qualified immunity in any event. The District argues that McAbee has not proffered sufficient allegations of a municipal policy, practice, or custom to support his *Monell* claim. The Court considers Defendants' arguments below. Ultimately, the Court finds that McAbee's case against Lancaster can move forward, but that his claims against the District must be dismissed.

**A. McAbee Has Sufficiently Alleged an Excessive Force Claim Against Defendant Lancaster.**

***1. The Parties Have Not Adequately Briefed Whether the Fourth or Fifth Amendment Applies in the Pretrial Detention Context.***

Before assessing the sufficiency of McAbee's allegations against Lancaster, the Court addresses a dispute between the Parties about whether McAbee has sued Defendants under the right constitutional provisions. McAbee's amended complaint brings two counts against Lancaster.[2] He claims that she violated the Fourth Amendment in Count I. ECF 11 ¶ 51. "[I]n addition and in the alternative to his Fourth Amendment claim," Count II alleges a cause of action under the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 58–59. Both counts are predicated on his allegation that Lancaster (twice) sprayed him in the face with a chemical agent. *See id.* ¶¶ 51–52, 59–60.

According to Defendants, because both counts are based upon the same conduct, the claims merge and are covered only under the Fourth Amendment. *See* Defendants' Mot. to Dismiss, ECF 13 at 5 ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a claim." (quoting *Abdelfattah v U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 541 (D.C. Cir. 2015)). McAbee insists that each count against Lancaster is based upon distinct factual allegations and should thus both proceed. Pl.'s Opp'n, ECF 14 at 1–5.

---

[2] McAbee's amended complaint brings one count against the District, but he includes alleged violations of the Fourth and Fifth Amendments in that count. ECF 11 ¶ 65. So, this discussion is also relevant to McAbee's claims against the District.

The Court agrees with Defendants that both counts against Lancaster are based on the same alleged misconduct. That is Lancaster spraying some chemical in McAbee's face.[3] *See, e.g.,* ECF 11 ¶¶ 52, 60. In reviewing McAbee's amended complaint, the Court does not discern distinct factual scenarios that could support separate counts or alternative theories. Regardless of how McAbee attempts to frame matters in his opposition, the only question at issue for both counts is whether Lancaster's use of force was justified or excessive, reasonable or unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 392–93 (2015) (characterizing petitioner's claim as one for excessive force under the Due Process Clause where petitioner, a pretrial detainee, alleged that corrections officers pinned him to the ground, slammed his head into concrete, and stunned him with a taser after he refused to comply with order to return to his jail cell). But the Court is not yet persuaded by Defendants' argument that the Fourth Amendment is the only (and thus correct) vehicle for McAbee's claims—at least based upon the Parties' briefs. After all, McAbee was in pretrial detention at the time of these events. ECF 11 ¶ 8. The constitutional sources of rights for pretrial detainees are not necessarily the same as for those who are not in

---

[3] McAbee's amended complaint contains some factual allegations about his conditions of confinement and placement in solitary confinement following this incident, ECF 11 ¶ 34. But that appears to be background information and not the basis for his due process claim. It is not referenced in McAbee's cause of action section, in connection with his discussion of damages, or addressed in his briefing. His opposition also includes an argument that his Fifth Amendment claim is independently viable because it raises a procedural due process component. ECF 14 at 2–3. But the Court sees no such claim in his amended complaint. *See, e.g.*, *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (recognizing that "[i]t is axiomatic that a party may not amend his complaint through an opposition brief."). His opposition seems to suggest that he was deprived of constitutionally required notice because Lancaster did not provide a verbal warning before spraying him. His amended complaint does allege that Lancaster sprayed him "unprovoked" and "without warning." ECF 11¶ 18. But his suggestion that that allegation supports a due process claim seems to be based upon a colloquial, not legal, definition of "notice." *See Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014) ("Due process ordinarily requires that procedures provide notice of the proposed official action and the opportunity to be heard at a meaningful time and in a meaningful manner."). In other words, the Court does not read the amended complaint to make any suggestion that any Defendant failed to provide him with advance notice of some violation such that he could sufficiently respond and object to any action Defendants intended to take against him, rather, he seems to allege that Lancaster's use of force caught him by surprise because he was not expecting it. If he is alleging that the Constitution requires Lancaster to provide a verbal warning before deploying pepper spray under the circumstances alleged, he does not offer any analogous case law to support that theory or address qualified immunity in that context.

custody or only at the point of arrest. The Supreme Court held in *Kingsley v. Hendrickson* that the Due Process Clause protects pretrial detainees from excessive force, but it has not yet decided whether a pretrial detainee can bring such a claim under the Fourth Amendment. *See Kingsley*, 576 U.S. at 408 (Alito, J., dissenting) ("Before deciding what a pretrial detainee must show in order to prevail on a due process excessive force claim, we should decide whether a pretrial detainee can bring a Fourth Amendment claim based on the use of excessive force by a detention facility employee. We have not yet decided that question. . . . If a pretrial detainee can bring such a claim, we need not and should not rely on substantive due process."); *see also Lombardo v. City of St. Louis, Mo.*, 594 U.S. 464, 467 n.2 (2021) ("Petitioners brought their excessive force claims under both the Fourth and Fourteenth Amendments. . . . We need not address whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee in Gilbert's position."); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").

      This Circuit's precedents do not clearly resolve the matter either. The D.C. Circuit has favorably considered a pretrial detainee's excessive force claim under the Due Process Clause, *see Norris v. District of Columbia*, 737 F.2d 1148, 1150–51 (D.C. Cir. 1984), but has not decided whether a pretrial detainee retains protection under the Fourth Amendment for such a claim. *See Hunter v. District of Columbia*, 943 F.2d 69, 78 (D.C. Cir. 1991) (describing *Norris* as "adopt[ing]" a "due process test" "for the use of force during pretrial detention") *abrogated on*

7

*other grounds by Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996). In one case addressing an excessive force claim in the context of an arrest, the Circuit briefly described the Fourth and Fifth Amendment nexus in pretrial detention. Citing *Norris*, the Circuit stated in a footnote that it had "appraised an excessive force claim under a [F]ifth [A]mendment due process rubric when it occurred in a pretrial detention context, where [F]ourth [A]mendment concerns are less prominent." *Martin v. Malhoyt*, 830 F.2d 237, 261 n.76 (D.C. Cir. 1987) (Ginsburg, R.B., J.). In combination, these cases suggest, but do not hold, that McAbee's claim might best be brought in this Circuit under the Fifth Amendment's Due Process Clause, as opposed to the Fourth Amendment.[4]

Indeed, many Circuits that have confronted this question have held the opposite of what Defendants urge here—namely, these courts have found that a plaintiff detained pretrial *cannot* bring a Fourth Amendment claim for excessive force and that such claims should be analyzed under the Due Process Clause. *See, e.g.*, *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (concluding that "[i]t is therefore well-established that the Fourteenth Amendment governs any claim of excessive force brought by a pretrial detainee" and recognizing "[o]n the other hand, we have held that the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable cause hearing"); *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010) ("We therefore join the Ninth and Tenth Circuits in setting the dividing line between the Fourth and Fourteenth Amendment zones of protection at the probable-cause hearing."); *Riley v. Dorton*, 115 F.3d 1159, 1163 (4th Cir. 1997) ("Because we believe that [*Bell v. Wolfish*, 441

---

[4] Another court in this district has stated that the Fifth Amendment, not the Fourth, "protects a pretrial detainee from the use of excessive force." *Armbruster v. Frost*, 962 F. Supp. 2d 105, 111 (D.D.C. 2013) (citing *Graham*, 490 U.S. at 395 n.10).

U.S. 510 (1979)] instructs us to analyze excessive force claims of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, we shall not extend the Fourth Amendment to cover Riley's situation."); *Valencia v. Wiggins*, 981 F.2d 1440, 1443–44 (5th Cir. 1993) ("We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring, as in this case, *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time."); *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1180 n.4 (11th Cir. 2020) (acknowledging that plaintiff pled both Fourth and Fourteenth Amendment excessive force claims, "but as a pretrial detainee, his rights—if any—under the Fourth Amendment are unclear"). That is because the Fourth Amendment, at least as these Circuits have found, applies to a person's seizure, the "initial deprivation of liberty," and not to anything that happens beyond that point. *Riley*, 115 F.3d at 1162–63 (collecting cases from circuit courts rejecting a "continuing seizure" theory for applying the Fourth Amendment to pretrial detainees).

      The Parties do not address this issue in their briefs. Both sides take it as given that the Fourth Amendment applies here, which seems to go against the weight of persuasive authority. And the only cases Defendants rely upon to support their argument that McAbee's Fifth Amendment claims merge into his claims under the Fourth Amendment do not involve plaintiffs in pretrial detention. *See, e.g.,* ECF 13 at 5; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (considering Fourth Amendment and Due Process claims brought by estate of motorist who was never in police custody, but died as a result of police vehicular chase); *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 36 (D.D.C. 2010) (excessive force claim against police officers in connection with plaintiff's arrest).

The Court cannot determine which amendment(s) provides the basis for a viable cause of action without considering whether the Fourth Amendment even covers plaintiffs in pretrial detention. And the Court prefers not to resolve an open constitutional question without more input from the Parties. So, the Court will defer resolution of this issue. The Court is comfortable doing so because the standards for excessive force claims under both Amendments is substantially similar.[5] For now, the Court will apply the due process test laid out by the Supreme Court in *Kingsley v. Hendrickson* to analyze a pretrial detainee's claim of excessive force. 576 U.S. at 397. The *Kingsley* test overlaps significantly with the Supreme Court's Fourth Amendment analysis in *Graham v. Connor*, 490 U.S. at 396. Both tests focus on objective reasonableness and direct lower courts to consider factors in assessing reasonableness including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397; *see also Norris*, 737 F.2d at 1150 (requiring courts to consider factors including "the need for the application of force," "the relationship between the need and the amount of force that was used," and "the extent of injury inflicted"); *Lombardo*, 594 U.S. at

---

[5] For this reason, the Court has difficulty understanding McAbee's claim that he pled these counts in the alternative because a factfinder could find that Lancaster's force was not excessive under the Fourth Amendment, but nonetheless conclude that she violated his due process right to be free from violent punishment—as if his Fifth Amendment claims as pled challenge something other than Lancaster's use of force against him. *See* ECF 11 ¶ 1; ECF 14 at 3. But while McAbee argues that *Kingsley v. Hendrickson* laid out a "standard for evaluating unconstitutional punishment of a pretrial detainee," *Kingsley* is clearly an excessive force case. ECF 14 at 2 (citing 576 U.S. 389 (2015)); *Kingsley*, 576 U.S. at 391–92 ("The question before us is . . . an excessive force claim" brought by a pretrial detainee.). *Kingsley* also noted that both an excessive force claim and a punishment-based claim look to evaluate whether "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. In other words, both of McAbee's claims allege that Defendant Lancaster's actions in spraying McAbee were not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Id*. As such, McAbee has not pled a separate Fifth Amendment claim in his complaint that involves anything other than Lancaster's alleged use of excessive force against him.

467 n.2 (noting that "[w]hatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case"). Accordingly, the Court can fully address Defendants' 12(b)(6) motion and Lancaster's qualified immunity defense without parsing counts. And the scope of discovery in the case is the same regardless of which count merges with the other. For the reasons explained below, the Court will allow McAbee's claims that Lancaster used unconstitutional force when she sprayed him with a chemical agent to proceed to discovery without dismissing one of the two counts pled against her. The Court will direct the Parties to brief the question concerning which amendment covers his claims as a pretrial detainee in any dispositive motions, or at an earlier point if requested as part of any scheduling order.

### 2. *McAbee Has Pled a Plausible Excessive Force Claim Against Lancaster.*

Applying the *Kingsley* test, McAbee's amended complaint sufficiently alleges that Lancaster used unconstitutionally excessive force against him. As stated above, the Court considers whether a defendant's use of force was reasonable by looking to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among other factors that may be relevant under the circumstances. *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).

Defendants argue that Lancaster's use of force was justified because McAbee acknowledges that he "ignored [her] verbal commands *three* times before she deployed" the first burst of chemical agent. ECF 13 at 13; *see also* ECF 11 ¶¶ 12–18. But Lancaster sprayed McAbee twice, and McAbee challenges her conduct collectively. He does not bring separate counts against

11

Lancaster for each time that she deployed the chemical agent. Thus, if McAbee plausibly alleges that Lancaster used excessive force at any point during his interaction with her, he can survive Defendants' motion to dismiss and get to discovery. And the Court finds that he has met his burden for doing so—at least by demonstrating that Lancaster's second use of pepper spray was excessive.

Considering the non-exhaustive list of factors the Court outlined above, Lancaster used excessive force against McAbee when she administered the second burst of chemicals in his face.[6] At that point, he alleges that he (1) was not threatening or assaulting the officers, ECF 11 ¶¶ 29–30; (2) was compliant and not resisting the officers' efforts to restrain him, *id.* ¶ 27; (3) was subdued with both hands behind his back and "one handcuff on his left hand and the second being placed on his right hand," *id.* ¶ 29; and (4) had already been sprayed once in the face "at point-blank range," *id.* ¶ 18, which suggests that he was at least partially incapacitated when Lancaster approached him. The D.C. Circuit has recognized that chemical agents, like pepper spray for example, are dangerous weapons "capable of causing extreme pain" and "serious injury," especially when deployed from a close range, as claimed here. *United States v. Brown*, 125 F.4th 1186, 1196–97 (D.C. Cir. 2025). McAbee alleges that he sustained serious physical (and emotional) injuries and pain because of Lancaster's actions. ECF 11 ¶ 37. Assuming that McAbee's allegations are true, it was unreasonable for her to use such significant force against a person who was restrained, subdued, and compliant. *See*, *e.g.*, *Hall v. District of Columbia*, 867 F.3d 138, 169 (D.C. Cir. 2017) (reversing grant of motion to dismiss where plaintiff alleged

---

[6] If this case involved only the first time that Lancaster sprayed McAbee, the Court acknowledges it would present a closer question. McAbee's amended complaint confirms that he repeatedly refused to abide by Lancaster's commands to return to his cell, and continued to advance forward after he was told not to. In doing so, he got so close to Lancaster that they made contact with each other. ECF 11 ¶¶ 12–18. But, as the Court recognized earlier, because McAbee challenges all of Lancaster's conduct within single counts, the Court does not need to isolate Lancaster's actions to determine whether his case can proceed to discovery. Even if Lancaster was justified in initially deploying a chemical agent on McAbee, that conduct would still be within the scope of discovery on whether it was reasonable for her to spray him again.

that officers used force against her "without justification" and where the "complaint contain[ed] no indication that [plaintiff] posed any threat to [the arresting officer] or others"); *Norris*, 737 F.2d at 1149, 1152 (recognizing constitutional violation where officers "maced, beat, and kicked" a pretrial detainee who was "following their directions and [ ] not resisting"). McAbee's earlier refusal to follow Lancaster's verbal commands is no justification; "[t]he use of force on a [person] who has already been subdued is plainly excessive . . . 'notwithstanding [that person's] previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon.'" *Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 141 (D.D.C. 2017) (quoting *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014)); *see also Segrain v. Duffy*, 118 F.4th 45, 66 (1st Cir. 2024) ("[T]he use of pepper spray by prison officials against a detained person when that person is no longer resisting and no longer presents any reasonable safety threat is a[] [constitutional] violation."); *Dean v. Jones*, 984 F.3d 295, 304–05 (4th Cir. 2021) ("Once [plaintiff] was subdued and [the officer] no longer had reason to fear for officer or public safety, the use of [pepper spray directly into plaintiff's face] became unnecessary and unjustified—even if all of that transpired merely seconds after [plaintiff] head-butted [the officer]."); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

Defendants argue that even the second deployment of pepper spray was justified because McAbee had "resisted [the officers] by putting his foot against the wall." *See* ECF 13 at 13. But reaching that conclusion would require the Court to draw inferences from McAbee's amended complaint in Defendants' favor. The Court cannot do that. According to McAbee, he did not

"physically resist" the officers when he extended his foot. ECF 11 ¶¶ 28, 30. His allegations suggest that he stuck his foot out reflexively—only to "avoid being slammed into" the wall—and he claims that his action "did not pose any physical threat" to the officers. *Id.* And, according to McAbee, that happened *before* Lancaster approached him and sprayed him for the second time. *Id.* ¶¶ 28–29. By the time Lancaster sprayed him again, he contends that he was in the custody of other officers, his hands were behind his back, and his handcuffs were almost on. *Id.* ¶ 29. Before that, he alleges that he asked the officers to restrain him in a certain way to avoid aggravating a pre-existing injury, suggesting that he was cooperating with—not obstructing—the officers' efforts to further detain him. *Id.* ¶ 27. The Court cannot draw a conclusion based on the amended complaint that McAbee impeded the officers' ability to restrain him by extending his foot against the wall. At this early stage of the case, the Court does not know if Lancaster (or any other officer) even perceived that action to be a threat. The Court cannot ignore McAbee's allegations, which sufficiently state a claim for unconstitutionally excessive force.

### 3. *Defendant Lancaster is Not Entitled to Qualified Immunity.*

The Court next considers Lancaster's qualified immunity defense. Qualified immunity is an affirmative defense that shields officers from liability for claims of unlawful conduct, so long as that conduct does not violate clearly established statutory or constitutional law. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To be "clearly established," "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "In assessing a claim of qualified immunity, the facts must be taken 'in the light most favorable to the

party asserting the injury.'" *Corrigan v. District of Columbia*, 841 F.3d 1022, 1035 (D.C. Cir. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Court cannot find that Lancaster is entitled to qualified immunity—not if it construes McAbee's allegations in his favor. Lancaster's argument to the contrary rests on her factual dispute with McAbee. She asks the Court to infer that McAbee was resisting and noncompliant, even when she sprayed him the second time, and argues that no caselaw put her on notice that she could not do that. ECF 13 at 17. But McAbee's amended complaint alleges the opposite. He claims that he was not resisting. *See* ECF 11 ¶¶ 27–32. Taking his allegations as true, it was clearly established at the time of these events that an officer cannot use force against a person who is subdued and compliant. The authority supporting that proposition in this Circuit (and others) is overwhelming and includes cases involving the use of chemical agents. *See, e.g.*, *Hall v. District of Columbia*, 867 F.3d at 157 (finding an officer's use of force excessive when "[t]he complaint contain[ed] no indication" that the plaintiff "posed any threat" to the officer or others); *Johnson v. District of Columbia*, 528 F.3d 969, 974–76 (D.C. Cir. 2008) (An officer's conduct violates "clearly established" law "if it furthers no governmental interest," as in the case of kicking a "surrendering suspect" who was "act[ing] in a submissive fashion."); *Arrington v. United States*, 473 F.3d 329, 336 (D.C. Cir. 2006) (finding that force would be excessive "[i]f appellant's hands were handcuffed behind his back before the officers inflicted bodily harm on him"); *Norris*, 737 F.2d at 1151 ("[S]ome courts have held macing in the face alone [is] sufficiently severe to state a constitutional claim."); *Dean v. Jones*, 984 F.3d 295, 304–05 (4th Cir. 2021) ("[I]t is well-established that officers may not use gratuitous force against a prisoner who has already been subdued or incapacitated," such as by pepper spraying an inmate "only after any threat to safety had passed."); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded

that using pepper spray is excessive force in cases where . . . the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) (holding that an officer violates an inmate's constitutional rights when he "uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat"); *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1271, 1275 (10th Cir. 2022) (holding that deploying pepper spray, without warning, at plaintiff's face, was unreasonable because the plaintiff "was not resisting, was not a threat to officer safety, and was under the officers' control"); *Danley*, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."). Defendants have conceded as much. *See* ECF 13 at 17 (acknowledging that "courts have held that deployment of pepper spray becomes unreasonable when directed at an individual who is *restrained* and *complaint*"). In light of this precedent, no officer confronting a person who was (1) subdued by officers, (2) had his hands behind his back, (3) was compliant, and (4) was not engaged in any threatening or assaultive conduct could possibly think it would be reasonable to spray that person in his face with a chemical agent. Accordingly, McAbee's excessive force claims can proceed against Lancaster.

### B. The Court Will Dismiss McAbee's *Monell* Claim Against the District of Columbia.

However, the Court agrees that McAbee's *Monell* claims against the District must be dismissed. His allegations supporting municipal liability are too conclusory for the Court to allow those claims to go forward.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities are not vicariously liable for their employees'

unconstitutional conduct. Rather, a municipality is responsible for its employees' constitutional violations only if those employees were following municipal policy or custom, and that policy or custom caused the constitutional violation at issue. *See id.* at 694; *see also Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). A plaintiff can plead a municipal policy or custom in a number of ways, including by alleging that (1) the municipality "explicitly adopted" a policy, *see Warren*, 353 F.3d at 39; (2) the municipality "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.*; (3) the municipality failed to "respond[] to a need" in a manner that showed "deliberate indifference" to the risk of constitutional violations, *id.*; or that (4) the municipality failed to properly train its employees, *see City of Canton v. Harris*, 489 U.S. 378, 380 (1989). In this Circuit, "a plaintiff need not identify multiple instances of unconstitutional conduct in order to [allege] an unconstitutional municipal policy . . . [but] []he still 'must include some factual basis for the allegation of a municipal policy or custom.'" *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 123 (D.D.C. 2012) (quoting *Atchinson*, 73 F.3d at 422). Bare allegations that a municipality has a custom or policy of permitting some constitutional violation, without reference to any facts reflecting such a policy, merely provide "a conclusory recital of the elements of a claim" and do not support a *Monell* claim. *Sheikh v. District of Columbia*, 77 F. Supp. 3d 73, 85 (D.D.C. 2015).

      McAbee's amended complaint does little more than parrot the elements of *Monell* liability. His allegations in his "statement of facts" section are confined to a few, scant paragraphs. ECF 11 ¶¶ 40–42. He alleges that the "moving force behind Defendant Lancaster's use of the chemical agents was a policy or custom of the District of Columbia or the [the Department of Corrections]," *id.*, but support for that conclusion is wanting. Same for his claim that "[s]uch policy or custom exists either expressly, or as the result of the District of Columbia policymakers' knowing failure

to prohibit the unjustified use of chemical agents at point-blank range, or as the result of the District of Columbia's deliberate indifference to the risk (about which the District of Columbia knew or should have known) that failure to train [Department] employees including Defendant Lancaster would result in constitutional violations like those alleged herein." *Id.* That just repeats what courts have found a plaintiff must prove to succeed on a *Monell* claim. What is the basis for McAbee's good-faith belief that the District has some express policy permitting its corrections officers to use pepper spray against compliant people? He never says.[7] Why does he suspect that the District's training of Department of Corrections officials on the lawful use of chemical agents is somehow deficient? There are no other allegations about the District's training protocols, or lack thereof, in his amended complaint.

The only factual support McAbee provides for his *Monell* claim is a reference to another case from this District, *Quander v. District of Columbia*, No. 22-cv-2539 (CJN), 2023 U.S. Dist. LEXIS 176316 (D.D.C. Sep. 29, 2023). ECF 11 ¶ 65. He alleges that *Quander* is "[a]nother example of the implementation" of the District's unconstitutional policies. *Id.* ¶ 41. The plaintiff in *Quander* was a pretrial detainee charged with several drug crimes, who was pepper sprayed in his cell by corrections officers. *Quander*, 2023 U.S. Dist. LEXIS 176316, at *2. The plaintiff in *Quander* alleged that the defendants violated his constitutional rights "when they failed to handcuff him prior to restraining him for disorderly conduct," *not* when they used pepper spray. *Id.* And

---

[7] In his opposition, McAbee argues that the fact that Lancaster allegedly "wrote up a disciplinary report against Plaintiff knowing that her actions were captured on video . . . supports the inference that she believed that her use of pepper spray was in fact permissible, which in turn implies the existence of a policy or custom permitting such use." ECF 14 at 7. The Court must draw all reasonable inferences in McAbee's favor—but that inference is not reasonable. McAbee alleges that Lancaster made false accusations in the disciplinary report. ECF 11 ¶ 35–36. If Lancaster thought her use of pepper spray was "permissible," ECF 14 at 7, why would she feel the need to lie in her disciplinary report, i.e., manufacture a story about McAbee's actions? *See* ECF 11 ¶ 35. It is purely speculative to infer that Lancaster's decision to write a disciplinary report demonstrates that she believed her use of chemical-agent spray was permissible (and thus pursuant to some express policy).

18

although the plaintiff in *Quander* alleged that "the officers pepper sprayed into his cell before entering it," they did so because (as the plaintiff himself conceded) he was smoking in his cell. *Id.* Another court in this District ultimately found that the plaintiff did not state a claim for any constitutional violation because "a reasonable officer could infer from smoke coming out of solitary confinement that an inmate has access to other illicit and dangerous materials." *Id.* at *7. Furthermore, the plaintiff in that case seemed to acknowledge "that he swung on four officers . . . an attack to which officers may respond with a limited and targeted degree of force." *Id.* The case was dismissed. *Id.* at *1. Thus *Quander* is hardly about officers deploying chemical agents against detainees who pose no threat. ECF 11 ¶ 65. McAbee's reference to an inapposite case that was dismissed—and other "incidents like those alleged" in that case—does not support an allegation that the District has a policy or custom of ratifying the unconstitutional use of chemical agents. *Id.* Because McAbee fails to provide "some factual basis for the allegation of a municipal policy or custom," he does not plausibly allege a *Monell* claim. *Atchinson*, 73 F.3d at 422. The Court therefore grants the District's motion to dismiss.

\* \* \*

For the foregoing reasons, Defendants' motion to dismiss, ECF 13, is **DENIED** as to McAbee's excessive force claim against Defendant Lancaster and otherwise **GRANTED**. The District of Columbia is dismissed as a defendant in this action.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: September 19, 2025