UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD COLTON MCABEE**, § | |
| § | No. 24-cv-01686 (JMC) |
| Plaintiff, § | |
| § | |
| vs. § | |
| § | |
| **CRYSTAL LANCASTER**, § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S MOTION TO COMPEL AND TO HOLD NON-PARTY DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS IN CONTEMPT FOR FAILURE TO COMPLY WITH SUBPOENA**

Plaintiff Ronald Colton McAbee ("Plaintiff"), by and through his undersigned counsel, hereby moves the Court for an order holding non-party District of Columbia Department of Corrections ("DOC") in contempt and compelling it to comply with the subpoena that was served upon it on October 28, 2025.

As set forth below, DOC either has ***destroyed*** or is ***actively concealing*** Defendant Lancaster's body-worn camera footage that depicts the facts giving rise to Plaintiff's Amended Complaint. It is doing so—and claiming that no such footage exists—even though (1) DOC showed the footage to a sitting Congressman in June 2024; (2) DOC acknowledged, in a July 2024 letter justifying its refusal to release the footage, that it had shown the footage to a Congressman in June 2024; and (3) Defendant herself stated that she activated her body-worn camera on the date in question. DOC first ignored the subpoena entirely, then made only an incomplete production, and now acts as though the requested evidence never existed. This is precisely the kind of case that warrants not only an order to compel but also the imposition of contempt sanctions.

Plaintiff makes this motion pursuant to Fed. R. Civ. P. 45(e) and (g), and in support thereof, Plaintiff states the following:

1

*Service of Subpoena on Non-Party DOC*

1. **Plaintiff Properly Serves the Subpoena**. On October 28, 2025, Plaintiff caused a subpoena, a true copy of which is attached hereto as **Attachment A** (Subpoena), to be served upon DOC. The subpoena requested the following records:

> (1) All photographs, video recordings, and audio recordings of Ronald McAbee taken 9/5/22-9/8/22. (2) All documents referring or relating to Ronald McAbee created on or after 9/5/2022. (3) All documents relating to any use of force against Ronald McAbee by Corporal Agbornkie, Corporal Winston, or Crystal Lancaster.

The subpoena was served upon Elektra Long, a Paralegal Specialist for DOC. *See* **Attachment B** (Affidavit of Service). The subpoena requested DOC's compliance by November 26, 2025, either by physical delivery or by email of the responsive records to Plaintiff's counsel. *See* **Attachment A** at 1. Under *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007), municipal agencies like DOC are "persons" who are susceptible to service of a subpoena and who may thus be compelled to respond or held in contempt for noncompliance.

2. **DOC Disregards the Subpoena**. The November 26, 2025, deadline came and went without any response from DOC. *See* **Attachment C** (Declaration of Plaintiff's Counsel). One week later, on December 3, Plaintiff's counsel emailed defense counsel to inquire whether defense counsel might follow up on the subpoena. *Id.* (Defense counsel had previously represented the District of Columbia when the District was a party to this action prior to the grant of its motion to dismiss.) On December 4, 2025, defense counsel kindly agreed to inquire. *Id.* One week later, on December 11, defense counsel confirmed that "DOC is evaluating the subpoena." *Id.*

3. **DOC Responds to the Subpoena Without Objecting**. Under Fed. R. Civ. P. 45(d)(2)(B), DOC could have objected to the subpoena if it believed it had a basis for doing so. It did not. Instead, on December 13, 2025, it began to produce responsive records, subject to the Protective Order in effect in this matter. In addition to producing records responsive to the subpoena, DOC

transmitted a response to Plaintiff's First Request for Production on Defendant (dated October 3, 2025), which Plaintiff had served only upon Lancaster but not upon DOC. *See* **Attachment C** (Declaration of Plaintiff's Counsel).

### *DOC Refuses to Produce Defendant Lancaster's Body-Worn Camera Footage*

4. **DOC Produces Some, But Not All, of the Video Footage**. On December 13, 2025, Elektra Long (the DOC employee upon whom the subpoena had been served personally) emailed Plaintiff's counsel to confirm an address for production of "BWC Footage." Plaintiff's counsel took this to refer to Defendant's body-worn camera footage. *Id.* On December 16, Ms. Long confirmed that the footage would be sent by flash drive. **Attachment D** (DOC Email). On December 22, Tony Towns (Acting General Counsel for DOC) wrote to confirm that the flash drive would be subject to the protective order, which Plaintiff's counsel acknowledged. *Id.* On December 23, a DOC messenger delivered a flash drive with approximately 5.7 gigabytes of data to the office of Plaintiff's counsel. *Id.* Plaintiff's counsel reviewed the production at length and determined that it contained only (1) the dayroom camera footage (with video but no audio), from 11:36 to 11:45 a.m. on September 5, 2022; and (2) four body-worn camera videos, one from each of four officers—but *not* Defendant Lancaster's video or Corporal Alexander Winston's video. *Id.*

5. **DOC Denies Defendant's Body-Worn Camera Footage Exists**. On January 5, 2026, Plaintiff's Counsel emailed Ms. Long to inquire as to the whereabouts of Defendant Lancaster's and Corporal Alexander's footage. *Id.* Ms. Long consulted with the surveillance supervisor Benjamin Collins and replied, "The DOC surveillance supervisor just confirmed that there is no BWC footage for Corporal Winston or Lieutenant Lancaster on September 5, 2022." *Id.* Plaintiff's counsel, incredulous at the suggestion, responded to inquire, "is it the case that (1) no such footage ever existed, or (2) the footage is no longer available?" *Id.* In response, Ms. Long wrote, "No. The

3

only footage is what was sent over on the flash drive. Neither officer for this case has body worn camera footage." *Id.* The response does not satisfactorily address whether DOC has destroyed the footage, has lost the footage, or has simply decided to conceal the footage—but those are the only three plausible explanations. The proposition that the footage never existed is *preposterous*, particularly because, as set forth in the following paragraphs, DOC has acknowledged *in writing* that it showed Defendant Lancaster's body-worn camera footage to a sitting Congressman.

*Overwhelming Evidence Demonstrates the Existence of*
*Defendant Lancaster's Body-Worn Camera Footage*

6. **FOIA Communications Show the Footage Existed**. Long before the commencement of this action, in January 2023, Congressman Troy Nehls, acting on Plaintiff's behalf, sent a record-preservation request to the District of Columbia specifically requesting the preservation of Defendant Lancaster's body-worn camera footage pending the resolution of a FOIA request. *See* **Attachment E** (Nehls request). A "Records, Information & Privacy Officer" of DOC responded to the request on February 21, 2023, acknowledging in an email to Rep. Nehls's counsel that the Congressman had made a request "seeking body-worn camera footage of Lt. Crystal Lancaster regarding a September 5, 2022 incident that involved Ronald McAbee," and advising "that the DOC has decided *to release* the footage to you before the end of the week in consideration of public interest." **Attachment F** (DOC FOIA Email) (emphasis added). Two days later, on February 23, 2023, the same officer wrote back, "There was a miscommunication, and I apologize. The decision remains not to disclose the video footage." *Id.* On June 5, 2023, the same officer issued a two-page document captioned "Freedom of Information Act Appeal" justifying DOC's decision not to release the video on the grounds that release would impair Defendant Lancaster's privacy interests. **Attachment G** (FOIA Appeal Denial). These communications demonstrate that the footage (1) existed and (2) was in DOC custody and control as of June 2023.

4

7. **DOC Showed the Footage to Congressman Nehls**. On or about June 12, 2024, after continued pressing from persistent legislators, DOC actually showed Defendant Lancaster's body-worn camera footage to Congressman Nehls and two of his staffers. *See* **Attachment C** (Declaration of Plaintiff's Counsel). The Director (Thomas Faust) and then-General Counsel (Andrew Mazzuchelli) were both in the room as Rep. Nehls and his staff watched the footage. *Id.* Andrew Mazzuchelli subsequently wrote a letter, dated July 15, 2024, to Rep. Nehls, two other Congressmen, and the House Judiciary Committee in which Mr. Mazzuchelli confirmed the "June 12, 2024 viewing . . . of the Body Worn Camera (BWC) video." **Attachment H** (Mazzuchelli Letter). Mr. Mazzuchelli further justified DOC's continued refusal to release that and other video footage on the grounds that doing so would compromise DOC safety and security and upset "the privacy interests of the resident at issue," among other reasons. *Id.* These communications further demonstrate that the footage (1) existed and (2) was in DOC custody and control as of July 2024. (Plaintiff notes that Plaintiff commenced this lawsuit in June 2024).

8. **Defendant Lancaster Herself Claimed to Have Activated Her Body-Worn Camera**. Plaintiff retained his copy of a disciplinary report that Defendant Lancaster had issued to him subsequent to the September 5, 2022, incident that gave rise to this action. *See* **Attachment I** (Disciplinary Report). In that report, Defendant Lancaster wrote that she "entered unit C2B at approximately 11:39am" and that, "[p]rior to entering unit C2B, I activated my body warn [*sic*] camera." *Id.* In her Answer to the Amended Complaint herein, Defendant Lancaster admitted a similar allegation. *Compare* ECF No. 11 (Complaint) ¶ 9 *with* ECF No. 21 (Answer) ¶ 9.

*Civil Contempt Is an Appropriate Remedy*

9. **Clear and Convincing Evidence Demonstrates DOC's Contempt.** Civil contempt is warranted under Fed. R. Civ. P. 45(g) when clear and convincing evidence shows that a person

5

knew of a valid subpoena and knowingly failed to obey it. *See, e.g.*, *NAACP, Jefferson County Branch v. Brock*, 619 F. Supp. 846, 849-50 (D.D.C. 1985). There is no innocent explanation for DOC's refusal to comply with Plaintiff's subpoena in this case. For nearly three years, despite having received a record-preservation notice, DOC has obstructed lawful requests for the production of Defendant Lancaster's body-worn camera footage. Its shifting rationales for denying the FOIA request—after initially communicating that it would disclose the footage, no less—coupled with its initial failure to respond to the subpoena altogether and its eventual response to Plaintiff's counsel that "there is no BWC footage for Corporal Winston or Lieutenant Lancaster on September 5, 2022," evince its bad faith in concealing the footage. Thus, the Court should grant not only Plaintiff's motion to compel production of the footage but also the motion for civil contempt, to include reasonable attorney's fees in preparing this motion and serving it upon DOC. *NAACP v. Brock*, 619 F. Supp. at 849-50 ("In civil contemnor, the moving party has the burden of proving that the alleged contemnor has violated the [subpoena] by clear and convincing evidence. The violation need not be intentional or willful; in fact, 'the intent of the recalcitrant party is irrelevant.'") (quoting *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981)).

Fed. R. Civ. P. 45(g) provides that this Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." DOC is such a person. *See Watts v. SEC*, 482 F.3d at 508. Contempt would have been an appropriate sanction for DOC's mere refusal to respond to the subpoena in the first instance; it is all the more appropriate now that DOC has brazenly denied the existence of footage that is central to the merits of this case and that it previous went to great lengths not to release. Plaintiff thus seeks $5,200 in attorney's fees plus $150 in estimated costs of service as a civil contempt sanction against DOC. *See* **Attachment C** (Declaration of Plaintiff's Counsel).

## CONCLUSION

For the foregoing reasons, Plaintiff moves the Court for an order (1) compelling DOC to produce all of Defendant Lancaster's body-worn camera footage from September 5, 2022, together with all other not-yet-produced video footage depicting Plaintiff on September 5, 2022 (including, but not limited to Corporal Alexander Winston's body-worn camera footage, if such footage ever existed), or, if such footage is no longer with DOC's custody or control, to show cause as to why DOC should not be held in further contempt for spoliation of said footage; (2) holding DOC in civil contempt for its noncompliance to date, and (3) imposing a $5,350 civil contempt sanction upon DOC for attorney's fees and costs of service in connection with this motion.

**Date**:   January 13, 2026                                                                 Respectfully submitted,

                                                                                             /s/ Kyle Singhal
                                                                                             Kyle Singhal (D.C. Bar No. 1601108)
                                                                                             HOPWOOD & SINGHAL PLLC
                                                                                             1701 Pennsylvania Ave., N.W., Suite 200
                                                                                             Washington, DC 20006
                                                                                             Telephone: (202) 769-4080
                                                                                             kyle@hopwoodsinghal.com
                                                                                             *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2026, I served a copy of the foregoing motion upon opposing counsel via the Court's CM/ECF system, and I provided a copy to a special process server to effect same-day personal service upon the District of Columbia Department of Corrections at 3924 Minnesota Avenue NE, 2nd Floor, Washington, DC 20019. I will file the affidavit of service once it is returned.

                                                                                             /s/ Kyle Singhal
                                                                                             Kyle Singhal
                                                                                             *Counsel for Plaintiff*