**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RONALD COLTON MCABEE**, | § | |
| | § | No. 24-cv-01686 (JMC) |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **CRYSTAL LANCASTER** | § | |
| | § | **JURY TRIAL DEMANDED** |
| and | § | |
| | § | |
| **DISTRICT OF COLUMBIA**, | § | |
| | § | |
| Defendants. | § | |

<u>**PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>

Comes now Plaintiff, Ronald Colton McAbee ("Mr. McAbee"), by and through his undersigned counsel, and—with opposing counsel's consent and in compliance with the deadline in this Court's Scheduling Order (ECF No. 22)—files this Second Amended Complaint, and in support thereof states as follows:

**I.      Preliminary Statement**

1.      Mr. McAbee seeks to hold Defendant Crystal Lancaster accountable for abusing her position as jailer when she (1) deployed chemical agents into Mr. McAbee's face twice, at point-blank range, without warning and without justification; (2) caused Mr. McAbee to languish in burning pain for three days before he could decontaminate himself; and, (3) in an attempt to cover up her misdeeds, wrote a report falsely accusing Mr. McAbee of having first assaulted her. Defendant Lancaster willfully violated Mr. McAbee's Fourth Amendment right to be free from the use of excessive force, and she willfully violated his Fifth Amendment right as a pretrial detainee to be free from violent punishment. What is more, Defendant Lancaster had been banned from even entering the unit where she attacked Mr. McAbee on account of her history of mistreating

detainees in that unit. She also had a history of defying basic security protocols in order to fraternize with detainees in other units. On September 5, 2022, Defendant Lancaster's superiors— knowing her ban and her history—staffed her in Mr. McAbee's unit anyway. Accordingly, Mr. McAbee seeks to hold the District of Columbia accountable for Defendant Lancaster's misdeeds.

## II.     Parties

2.      Mr. McAbee is an adult American citizen and is a resident of the State of Tennessee.

3.      Defendant Lancaster is an adult American citizen and was at all relevant times employed by the District of Columbia Department of Corrections ("DOC") as a Lieutenant at the District of Columbia Central Detention Facility ("DC Jail"), which the DOC operates.

4.      Defendant District of Columbia is the municipal government entity under which the DOC operates.

## III.    Jurisdiction and Venue

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4), which grant jurisdiction over cases, like this one, that are brought under 42 U.S.C. § 1983.

6.      This Court has personal jurisdiction over Defendant Lancaster because this lawsuit arises from her contacts with the District of Columbia—namely from her personal decision to use excessive force against Mr. McAbee at the DC Jail. This Court has general personal jurisdiction over the District of Columbia.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all the events giving rise to this suit occurred within this District.

**IV.    Statement of Facts**

8.    On September 5, 2022, Mr. McAbee was minding his own business in Unit C2B at the DC Jail, where he was confined as federal pretrial detainee.

9.    At 11:29 a.m. on September 5, 2022, Defendant Lancaster entered Unit C2B, with her body-worn camera activated, to conduct a security check.

10.    When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, she had been banned from entering the unit.

11.    When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, she knew that she had been banned from entering the unit.

12.    Defendant Lancaster had been banned from entering Unit C2B because of Defendant Lancaster's prior difficulties with the detainees in that unit, including her deprivation of detainees' liberties by unreasonably and unconstitutionally searching them, taunting them, treating them discriminatorily, escalating confrontations with them, and arbitrarily locking them down (with such lockdowns depriving the detainees of their telephone and other privileges).

13.    Detainees in Unit C2B had previously filed grievances making the DOC aware of Defendant Lancaster's actions against them.

14.    Defendant Lancaster's established history of an inability peaceably to supervise the inmates in Unit C2B, together with Defendant Lancaster's established history of violating DOC security protocols in order to provide preferential treatment to other inmates, created a risk that, if she reentered Unit C2B when she was banned from doing so, she would violate a detainee's constitutional rights.

3

15. Defendant Lancaster's historical failure to comply with basic security protocols created a risk that, if she reentered Unit C2B when she was banned from doing so, she would violate security protocols regarding the use of force against detainees.

16. When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, at least one of Defendant Lancaster's supervisors or superiors within the Department of Corrections knew that Defendant Lancaster had been banned from entering the unit because of Defendant Lancaster's prior difficulties with the detainees in that unit and, despite that knowledge, knowingly permitted her to enter the unit.

17. Major Marr was one of Defendant Lancaster's supervisors or superiors within the Department of Corrections who knew that Defendant Lancaster had been banned from entering the unit because of Defendant Lancaster's prior difficulties with the detainees in that unit and who, despite that knowledge, knowingly permitted her to enter the unit.

18. Major Marr was a DOC policymaker for reasons that include, but are not limited to, her role in making staffing decisions that place officers like Defendant Lancaster in units like Unit C2B.

19. When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, at least one of Defendant Lancaster's supervisors or superiors within the Department of Corrections knowingly failed to prevent Defendant Lancaster from entering Unit C2B.

20. When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, at least one of Defendant Lancaster's supervisors or superiors within the Department of Corrections knowingly failed to prevent Defendant Lancaster from perpetuating her established customs of harassing the detainees in Unit C2B, escalating confrontations with them, and violating their rights.

21.     When Defendant Lancaster entered Unit C2B at 11:29 a.m. on September 5, 2022, at least one of Defendant Lancaster's supervisors or superiors within the Department of Corrections had personal knowledge of the risk that Defendant Lancaster would violate the constitutional rights of detainees in Unit C2B and deliberately failed to mitigate that risk.

22.     Defendant Lancaster's supervisors or superiors within the Department of Corrections knew of the need to keep Defendant Lancaster out of Unit C2B and they willfully chose not to subject her to additional training or to enforce the ban on her presence in Unit C2B, knowing that failing to take such measures would increase the risk of Defendant Lancaster's violating the constitutional rights of detainees in Unit C2B.

23.     Major Marr was one of Defendant Lancaster's supervisors or superiors within the Department of Corrections who willfully chose not to subject Defendant Lancaster to additional training or to enforce the ban on her presence in Unit C2B, knowing that failing to take such measures would increase the risk of Defendant Lancaster's violating the constitutional rights of detainees in Unit C2B.

### *Defendant Lancaster Attacks Mr. McAbee*

24.     At or just before 11:37 a.m. on September 5, 2022, a nurse entered Unit C2B for the routine purpose of dispensing medication to inmates.

25.     At 11:37 a.m., an inmate (who was not Mr. McAbee) walked across Unit C2B from a location near the nurse cart, across Defendant Lancaster's field of view, to the other side of the unit, without wearing a COVID-19 face mask, and, despite Defendant Lancaster's having seen the inmate do so, Defendant Lancaster said nothing to that inmate.

26.     At 11:38 a.m., Mr. McAbee began to approach the nurse to obtain his orally administered medication. Because Mr. McAbee was in his living area and was obtaining orally

administered medication, he was not wearing a COVID-19 face mask. DC Jail policy required inmates like Mr. McAbee to remove any face mask while consuming such medication anyhow, so as to demonstrate to the nurse that the inmate had in fact consumed the medication.

27. Defendant Lancaster saw Mr. McAbee approach and yelled at him to put a mask on.

28. Mr. McAbee replied that he would get his mask after getting his medication. Mr. McAbee continued to approach the nurse.

29. As Mr. McAbee continued towards the nurse, Defendant Lancaster approached him, walked forward and extended her arm into his trajectory, and told Mr. McAbee not to hit her.

30. Mr. McAbee then moved past Defendant Lancaster towards the nurse. Because Defendant Lancaster had extended her arm in front of Mr. McAbee, Defendant Lancaster's hand brushed Mr. McAbee's upper arm.

31. Defendant Lancaster then falsely accused Mr. McAbee of having assaulted her. Defendant Lancaster and Mr. McAbee then exchanged words several times, with Defendant Lancaster commanding Mr. McAbee to get his face mask and Mr. McAbee telling Defendant Lancaster, while standing at the nurse cart, that he was trying to get his medication.

32. While Mr. McAbee was standing at the nurse cart, several paces away from Defendant Lancaster, Defendant Lancaster then placed her hand on her canister of chemical spray, repeated her false accusation that Mr. McAbee had assaulted her, and then—entirely unprovoked, with no warning to anyone, and without calling for backup—lunged forward and administered at least a one-second burst of chemical agent directly to Mr. McAbee's face, at point-blank range.

33. At no point did Mr. McAbee threaten, assault, or physically resist Defendant Lancaster.

34.    At no point was Mr. McAbee engaged in riotous behavior.

35.    Defendant Lancaster faced no use or threat of force from Mr. McAbee when she deployed the chemical agent to his face.

36.    Defendant Lancaster knowingly, maliciously, and sadistically administered the chemical agent directly to Mr. McAbee's face from less than four feet away.

37.    Any reasonable officer would have known that it was objectively unreasonable and unconstitutional to administer a chemical agent directly to Mr. McAbee's face under these circumstances.

38.    Mr. McAbee responded to this attack with impolite language, but he continued not to threaten or assault anyone.

39.    Defendant Lancaster called for backup.

40.    Defendant Lancaster asked Corporal Agbornkie and Corporal Winston to restrain Mr. McAbee.

41.    Mr. McAbee attempted to ask the officers why Defendant Lancaster had sprayed him. Mr. McAbee also attempted to ask the officers to use a double handcuff restraint, rather than a single set of handcuffs, due to Mr. McAbee's preexisting shoulder injuries.

42.    At 11:41 a.m., Corporal Winston had Mr. McAbee stand up, and Corporal Winston began to restrain Mr. McAbee. By this time, Defendant Lancaster had backed away from Mr. McAbee and no longer had any reason to be involved, as Mr. McAbee was being restrained by Corporal Winston, and Corporal Winston had not asked for any assistance in restraining Mr. McAbee. Nevertheless, Defendant Lancaster then came from behind, entirely unprovoked, *while Mr. McAbee was restrained*, and knowingly, maliciously, and sadistically administered a *second* burst of chemical agent directly into Mr. McAbee's face from mere inches away.

43.    Mr. McAbee did not threaten, assault, or physically resist Corporal Agbornkie, Corporal Winston, Defendant Lancaster, or any other individual.

44.    Mr. McAbee did not engage in riotous behavior.

45.    Any reasonable officer would have known that it was objectively unreasonable and unconstitutional to administer a second burst of the chemical agent directly to Mr. McAbee's face under these circumstances.

46.    Following the two chemical sprays, Defendant Lancaster and another officer yelled at Mr. McAbee for not wearing a COVID-19 mask and placed him in a shower with only scalding hot water, which amplified the burning sensation of the chemical spray, and no soap. Mr. McAbee received a change of clothes, which he was then required to wear for three days. Mr. McAbee was not provided an opportunity to decontaminate thoroughly. Instead, Mr. McAbee was taken to a medical facility, en route to which—as Mr. McAbee was handcuffed behind his back—an officer placed a COVID-19 mask on Mr. McAbee's face.

47.    Mr. McAbee was then placed in solitary confinement for three days with only a mattress and writing material, still with no opportunity to decontaminate himself despite multiple requests. During that time, the chemical agent reactivated and caused Mr. McAbee intense burning pain. Finally, on the third day, an officer on duty took pity on Mr. McAbee and permitted Mr. McAbee to take a thorough shower and receive a new change of clothes.

48.    Defendant Lancaster wrote a disciplinary report alleging that Mr. McAbee had incited a riot, had physically threatened Defendant Lancaster, and had assaulted Defendant Lancaster.

49.    These allegations in the disciplinary report were false.

50.     No hearing was ever held on the violations alleged in the disciplinary report, and the prosecutors declined to bring criminal charges against Mr. McAbee after reviewing video evidence of the above-described events, discussed below. On information and belief, no finding was ever made that Mr. McAbee had in fact committed the violations alleged in the disciplinary report.

51.     Defendant Lancaster's false allegation that Mr. McAbee had assaulted her caused Mr. McAbee to receive an institutional-violence designation.

52.     This institutional-violence designation followed Mr. McAbee for over two years to various places of confinement until Mr. McAbee was released from confinement in January 2025.

53.     From September 2022 to January 2025, Mr. McAbee's life was in greater danger than it otherwise would have been because of Defendant Lancaster's false report. For instance, the institutional-violence designation led to Mr. McAbee's placement in a maximum-security unit at one of the facilities that subsequently housed him. Upon Mr. McAbee's arrival at that unit, another inmate handed McAbee a shank (a sharp weapon) and commanded Mr. McAbee to fight or else be assaulted, whereas that high-risk encounter would not have occurred in a lower-security unit in which Mr. McAbee would otherwise have been confined. But for Lancaster's actions and her subsequent false report against Mr. McAbee, Mr. McAbee would not have been subjected to the maximum-security detention at that facility or to the concomitant risk to his life and increased emotional distress.

54.     As a result of Defendant Lancaster's actions administering the chemical agent to Mr. McAbee's face, Mr. McAbee suffers continued physical and emotional trauma over three years later. Whenever Mr. McAbee hears anything about COVID-19 masks, his heart races, his hands sweat, and he fears that he will be violently assaulted by an officer just like Defendant Lancaster

violently assaulted him. Mr. McAbee continues to suffer anxiety from approaching officers without wearing a COVID-19 mask. And Mr. McAbee frequently recalls the temporary blindness, the days of languishing in chemical spray after the incident occurred, and the intense burning pain that he experienced throughout his eyes, nose, and throat.

55.    Perversely, the United States later used Defendant Lancaster's attack against Mr. McAbee to argue for an increased sentence *for Mr. McAbee* on the grounds that "Mr. McAbee had an altercation with jail personnel" while awaiting trial. *See* Government's Sentencing Memorandum at 39, ECF No. 429, in *United States v. Ronald Colton McAbee*, D.D.C. No. 21-Cr-35 (RC) (Feb. 21, 2024).

56.    Defendant Lancaster knowingly used excessive force against Mr. McAbee without any legitimate non-punitive purpose. In doing so, Defendant Lancaster knowingly deviated from established protocols governing the use of chemical agents on inmates.

57.    The District of Columbia had actual knowledge of Defendant Lancaster's extensive violations of security protocols and of her sustained difficulties with inmates in Unit C2B.

58.    The District of Columbia had a policy of permitting Defendant Lancaster to violate security protocols both by mistreating detainees in Unit C2B and by treating inmates in other units preferentially.

59.    The District of Columbia continued to permit Defendant Lancaster to work at the DC Jail without further training, without any correction, and without any oversight as she made rounds in Unit C2B where she had been banned.

60.    The District also knowingly ignored the fact that officers routinely failed to wear body-worn cameras despite ample signs through the facility stating that body-worn cameras were required to be turned on within Unit C2B. These officers' superiors and supervisors knowingly

failed to take any corrective action. For instance, several of the officers who were in Unit C2B on September 5, 2022, did not have body-worn cameras (or if they did, did not activate them), including Corporal Winston (the officer who restrained McAbee). This practice constituted a custom and increased the likelihood of Defendant Lancaster's violating Mr. McAbee's constitutional rights on September 5, 2022, particularly in light of the fact that Defendant Lancaster's second spray of Mr. McAbee was in close view only of officers like Corporal Winston who were not wearing a body-worn camera.

61.    The District also knowingly ignored the fact that officers had previously used excessive force against inmates and, as a matter of policy, took steps either to cover up or otherwise diminish such use. For instance, Major Marr (the same person responsible for Defendant Lancaster's placement in Unit C2B) had, in the weeks or months leading up to September 5, 2022, personally used excessive force against another inmate in Unit C2B (which, on information and belief, was a response to the inmate's failure to wear a COVID-19 face mask) and then subsequently required a corporal to write up a report claiming falsely that the corporal, rather than Major Marr, had been the one to use excessive force. Major Marr personally, knowingly, and deliberately turned a blind eye to the use of excessive force against inmates in Unit C2B, and that policy decision was at least in part responsible for Defendant Lancaster's use of force against Mr. McAbee on September 5, 2022.

62.    Other facts show Major Marr's role in facilitating Defendant Lancaster's abuse of McAbee. For instance, Major Marr was a close friend, if not family member or family friend, of Defendant Lancaster, and she knowingly ignored Defendant Lancaster's practice of violating security protocols, providing preferential treatment to certain inmates, and using excessive force against inmates.

11

*Defendants Withhold Key Video Evidence*

63.     Defendant Lancaster's body-worn camera captured most if not all of the above-described events.

64.     On January 9, 2023, approximately four months after these events, U.S. Congressman Troy E. Nehls (R-TX), acting as Mr. McAbee's agent, requested that DOC release Defendant Lancaster's body-worn camera footage for the time period of 10:00 a.m. to 1:00 p.m. on September 5, 2022.

65.     On January 30, 2023, Congressman Nehls, still acting as Mr. McAbee's agent, notified District of Columbia Mayor Muriel Bowser of the September 5, 2022, incident and requested that Mayor Bowser preserve the camera footage.

66.     On February 21, 2023, Oluwasegun Obebe (Records, Information & Privacy Officer for DOC's Office of General Counsel) sent an email to Taylor Reaves (employee of Congressman Nehls) acknowledging the request for "body-worn camera footage of Lt. Crystal Lancaster regarding a September 5, 2022 incident that involved Ronald McAbee" and advising that "DOC has decided to release the footage to you before the end of the week in consideration of public interest."

67.     On February 23, 2023, Oluwasegun Obebe sent another email to Ms. Reaves stating: "There was a miscommunication, and I apologize. The decision remains not to disclose the video footage."

68.     Following Plaintiff's initial filing of this lawsuit and service of a subpoena upon the DOC, the DOC initially failed to produce Defendant Lancaster's body-worn camera footage, claiming that no footage had ever existed.

12

69.     Only after Plaintiff filed a motion to compel the DOC's response and hold the DOC in contempt did the DOC turn over the footage, in response to which Plaintiff withdrew his motion to compel and hold in contempt.

70.     At all times relevant to this lawsuit, the DOC has maintained a policy of covering up abuses of inmates including the use of excessive force against inmates in Unit C2B (but not other inmates) who did not properly wear COVID-19 face masks.

## V.     Causes of Action

### COUNT I
### DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983
### (FOURTH AMENDMENT / EXCESSIVE FORCE)

71.     Mr. McAbee incorporates by reference all of the preceding paragraphs of this Complaint.

72.     Defendant Lancaster, acting under color of District of Columbia law, knowingly deprived Mr. McAbee of his clearly established Fourth Amendment right to be free from the use of excessive force.

73.     Defendant Lancaster used force against Mr. McAbee under circumstances in which any reasonable officer would have known the use of force was unconstitutionally excessive.

74.     Defendant Lancaster did so twice.

75.     Defendant Lancaster had no justification, such as self-defense or defense of others, that might have permitted the use of force.

76.     Defendant Lancaster's excessive use of force was the actual and proximate cause of Mr. McAbee's bodily injury, pain, suffering, emotional distress, and other harms, causing damages in an amount to be proven at trial.

Wherefore, based on the foregoing facts, Mr. McAbee respectfully requests that this Court enter a judgment consisting of an award of all damages available by law, in favor of Mr. McAbee and against Defendant Lancaster, plus interest and costs.

## COUNT II
### DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983
### (FIFTH AMENDMENT / DUE PROCESS)

77.    Mr. McAbee incorporates by reference all of the preceding paragraphs of this Complaint.

78.    At all times relevant to this complaint, Mr. McAbee was a pretrial detainee who had not been convicted of a crime.

79.    Mr. McAbee thus enjoyed a Fifth Amendment Due Process right to be free from punitive restrictions or conditions while confined at the DC Jail.

80.    Mr. McAbee's Fifth Amendment claim is lodged in addition and in the alternative to his Fourth Amendment claim. Even if the ultimate factfinder determines that Mr. McAbee was not subjected to excessive force in violation of his Fourth Amendment rights, Mr. McAbee alleges that Defendant Lancaster's use of the chemical-agent spray was a punitive measure (*i.e.*, a measure that served no legitimate non-punitive purpose) in violation of Mr. McAbee's right to be free from punitive conditions as a pretrial detainee.

81.    Defendant Lancaster, acting under color of District of Columbia law, knowingly deprived Mr. McAbee of his clearly established Fifth Amendment right to be free from the use of chemical-agent spray administered to his face without any legitimate non-punitive purpose.

82.    Defendant Lancaster's use of chemical agents against Mr. McAbee was punitive.

14

83.     Defendant Lancaster's use of chemical agents against Mr. McAbee was the actual and proximate cause of Mr. McAbee's bodily injury, pain, suffering, emotional distress, and other harms, causing damages in an amount to be proven at trial.

Wherefore, based on the foregoing facts, Mr. McAbee respectfully requests that this Court enter a judgment consisting of an award of all damages available by law, in favor of Mr. McAbee and against Defendant Lancaster, plus interest and costs.

**COUNT III**
**DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983**
**(FOURTH AND FIFTH AMENDMENTS / MUNICIPAL LIABILITY)**

84.     Mr. McAbee incorporates by reference all of the preceding paragraphs of this Complaint.

85.     Mr. McAbee's municipal liability claim is a *Monell* claim, not a claim for *respondeat superior* liability.

86.     The moving force behind Defendant Lancaster's use of the chemical agents in violation of both the Fourth and Fifth Amendments was a policy or custom of the District of Columbia or the DOC. Such policy or custom exists either expressly, or as the result of District of Columbia policymakers' (1) knowingly ignoring Defendant Lancaster's custom of violating the rights of detainees in Unit C2B; (2) knowingly ignoring Defendant Lancaster's custom of violating DOC security protocols by treating other inmates abusively; (3) knowingly ignoring the risk that an officer like Defendant Lancaster would use excessive force against an inmate and then seek to cover up the misuse of force as Major Marr had previously done; (4) acting with deliberate indifference to the risk that staffing Defendant Lancaster in Unit C2B when she had been banned there would result in her violating the constitutional rights of detainees in that unit; or (5) failing to train Defendant Lancaster or otherwise respond to Defendant Lancaster's need for immediate

15

correction when Defendant Lancaster's supervisors had actual notice of her repeated and customary violations of security protocols.

87.    But for such policies or customs of the District of Columbia or the DOC that contributed to Defendant Lancaster's use of excessive force, Mr. McAbee would not have suffered the injuries alleged herein.

88.    One or more such policy or custom of the District of Columbia was an actual and proximate cause of Mr. McAbee's bodily injury, pain, suffering, emotional distress, and other harms, causing damages in an amount to be proven at trial.

Wherefore, based on the foregoing facts, Mr. McAbee respectfully requests that this Court enter a judgment consisting of an award of all damages available by law, in favor of Mr. McAbee and against the District of Columbia, plus interest and costs.

## VI.    Jury Trial Demanded

Mr. McAbee hereby requests that a jury be empaneled to hear this matter.

## VII.    Prayer for Relief

Wherefore, based on the foregoing, Mr. McAbee demands the following relief: (a) compensatory damages in a full and fair sum to be determined by a jury, (b) punitive damages to be determined by a jury; (c) reasonable attorney's fees; and (d) all damages authorized at law or equity.

**Date**:  March 27, 2026                               Respectfully submitted,

/s/   Kyle Singhal
Kyle Singhal (D.C. Bar No. 1601108)
Hopwood & Singhal PLLC
1701 Pennsylvania Ave., N.W. #200
Washington, DC 20006
(202) 769-4080
kyle@hopwoodsinghal.com
*Attorney for Plaintiff*

16