**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RONALD COLTON MCABEE, <br><br> *Plaintiff*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants*. | Civil Action No. 24-cv-01686 (JMC) |

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT**

Defendant District of Columbia respectfully moves to dismiss the Second Amended

Complaint under Fed. R. Civ. P. 12(b)(6).  A memorandum of points and authorities and a

proposed order are attached.

Dated: April 23, 2026             Respectfully submitted,

                                  BRIAN L. SCHWALB
                                  Attorney General for the District of Columbia

                                  CHAD COPELAND
                                  Deputy Attorney General
                                  Civil Litigation Division

                                  */s/ Christina Okereke*
                                  CHRISTINA OKEREKE [219272]
                                  Chief, Civil Litigation Division Section II

                                  */s/ Sarah Preis*
                                  SARAH PREIS [997387]
                                  Assistant Attorney General
                                  400 6th Street NW
                                  Washington, D.C. 20001
                                  (202) 727-5291
                                  sarah.preis@dc.gov

                                  *Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RONALD COLTON MCABEE,

                    *Plaintiff*,

        v.

DISTRICT OF COLUMBIA, *et al.*,          Civil Action No. 24-cv-01686 (JMC)

                    *Defendants*.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

The District submits this memorandum of points and authorities in support of its motion to dismiss under Fed. R. Civ. P. 12(b)(6).  In the Second Amended Complaint (Complaint), Plaintiff again alleges that Defendant Crystal Lancaster violated his Fourth Amendment right to be free from the use of excessive force (Count I) and his Fifth Amendment right "to be free from punitive restrictions or conditions while confined at the DC Jail" (Count II).  *See* Second Am. Compl. (Compl.) ¶¶ 70–83.  And he has attempted to revive his previously dismissed municipal liability claim against the District, alleging that the "moving force" behind Defendant Lancaster's use of excessive force against him was "a policy or custom of [the District] or [the Department of Corrections]." *Id*. ¶ 86.  But because he does not plausibly allege a claim for municipal liability, Count III—the only claim against the District—should be dismissed, and thus the District should be dismissed from this action with prejudice.

**FACTS**

On September 5, 2022, Plaintiff was incarcerated in the DC Jail as a pretrial detainee, housed in Unit C2B.  Compl. ¶ 8.  At 11:29 a.m., Defendant Lancaster entered Unit C2B, with her body-worn camera activated, to conduct a security check.  *Id.* ¶ 9.  Plaintiff alleges that at that time, Defendant Lancaster had been "banned" from the Unit due to "prior difficulties with detainees in that unit," including "unreasonably and unconstitutionally searching them," "taunting them, treating them discriminatorily, escalating confrontations with them, and arbitrarily locking them down[,]" which "depriv[ed] them of their telephones and other privileges."  *Id.* ¶ 11–12.  Plaintiff alleges that detainees in Unit C2B filed grievances "making [the District] aware of Defendant Lancaster's actions against them."  *Id.* ¶ 13.

According to Plaintiff, Lancaster's "inability to peaceably supervise the inmates in Unit C2B," combined with her "established history of violating DOC protocols to provide preferential treatment to other inmates," created the risk that if she entered Unit C2B when she was banned from doing so, she would "violate a detainee's constitutional rights."  *Id.* ¶ 14.  Further, he alleges that her "historical failure to comply with basic security protocols created a risk" that she would violate security protocols regarding the use of force against detainees if she entered Unit C2B when she was "banned" from doing so.  *Id.* ¶ 15.  Plaintiff further alleges that "at least one of" Lancaster's superiors knew she had been banned from Unit C2B due to "prior difficulties" with its inmates but "knowingly permitted her to enter the unit."  *Id.* ¶ 16.  Major Marr was among Lancaster's supervisors who was allegedly aware of the ban but nonetheless "knowingly permitted [Lancaster] to enter the unit."  *Id.* ¶ 17.  Plaintiff alleges that Major Marr was a "policy maker[,]" including because of her "role in making staffing decisions that place officers like Defendant Lancaster in units like Unit C2B[,]" and that she and/or other unnamed superiors or

2

supervisors "willfully chose not to subject Defendant Lancaster to training or to enforce the ban on her presence in Unit C2B" despite knowing that failure to do so "would increase the risk of [Lancaster] violating the constitutional rights of detainees in Unit C2B." *Id.* ¶¶ 18, 22–23.

Plaintiff further alleges that when Lancaster entered Unit C2B on September 5, 2022, at least one of her "supervisors or superiors . . . knowingly failed to prevent her from entering Unit C2B" and from "perpetuating her established customs of harassing the detainees in Unit C2B, escalating confrontations with them, and violating their rights." *Id.* ¶¶19–20. He also alleges that the District "had personal knowledge of the risk that Defendant Lancaster would violate the constitutional rights of detainees in Unit C2B" and "failed to mitigate that risk." *Id.* ¶ 21.

Turning to the incident in question, Plaintiff alleges that on September 5, 20222, at 11:38 a.m., he began to approach a nurse in Unit C2B so he could receive orally administered medications. *Id.* ¶ 26. He alleges he was not wearing a COVID-19 mask as he was approaching since "DC jail policy requires him to remove any such face mask while consuming such medications anyhow . . . ." *Id.* ¶ 26. Lancaster saw him approach and "yelled at him to put a mask on." *Id.* 27. Plaintiff replied that he would put it on after getting his medication and continued toward the nurse. *Id.* ¶ 28. According to Plaintiff, Lancaster then approached him, "extended her arm into his trajectory, and told [Plaintiff] not to hit her." *Id.* ¶ 29. Yet Plaintiff continued on, and Lancaster's hand "brushed" Plaintiff's upper arm. *Id.* ¶ 30. He alleges that she "falsely" accused him of assaulting her, at which point she and Plaintiff "exchanged words" several times, including when she "command[ed]" him to put his face mask on, while he responded that he was trying to get his medication. *Id.* ¶ 31. As he stood at the nurse's cart, Plaintiff alleged that Lancaster "repeated her false accusation that [Plaintiff] assaulted her" and then lunged forward and administered an "at least one-second burst" of chemical agent to his

3

face.  *Id.* ¶ 32.  According to Plaintiff, "at no point" did he "threaten, assault, or physically resist" Lancaster or engage in "riotous behavior"; nor did he use or threaten force at the time of the first spray.  *Id.* ¶¶ 33–34.  Plaintiff admits that he "responded with impolite language" but alleges that he continued to "not threaten or assault anyone."  *Id.* ¶ 38.  Lancaster called for backup and asked Corporal Agbornkie and Corporal Winston to restrain Plaintiff.  *Id.* ¶¶ 39–40.  At 11:41 a.m., Corporal Winston "had [Plaintiff] stand up" and began to restrain him.  *Id.*  ¶ 42.  Plaintiff alleges that while he was restrained, Lancaster administered a second burst of chemical spray into his face.  *Id.*

Plaintiff further alleges that Lancaster "deviated from the established protocols governing the use of chemical agents on inmates and that the District "had actual knowledge of [her] "extensive violation of security protocols" and "sustained difficulties" with inmates in Unit C2B. *Id.* ¶ 56–57.  He also alleges the District "had a policy of permitting Defendant Lancaster to violate security protocols both by mistreating detainees in Unit C2B and by treating inmates in other units preferentially."  *Id.* ¶ 58.  According to Plaintiff, the District failed to provide Lancaster further training or oversight "as she made rounds in Unit C2B where she had been banned."  *Id.*¶ 59.  He goes on to make allegations about officers failing to wear or deploy body-worn camera footage, including Corporal Winston, which he contends increased the likelihood that Lancaster would violate his constitutional rights on September 5, 2022, alleging in particular that Corporal Winston was not wearing body-worn camera.  *Id.* ¶ 60.  He also alleges that the District "knowingly ignored the fact that officers had previously used excessive force against inmates, and, as a matter of policy, took steps to either cover up or diminish such use."  *Id.*  He provides one example, alleging that Major Marr, "in the weeks or months leading up to September 5, 2022," used excessive force against an inmate, which "on information and belief"

4

was in response to that inmate's failure to wear a COVID-19 mask, and then required a corporal to write a report falsely attributing the use of force to the corporal. *Id.* ¶ 61. He also alleges that Major Marr "deliberately turned a blind eye" to excessive force against inmates in Unit C2B, and that this supposed "policy decision" was "at least in part responsible for Defendant Lancaster's use of force against [Plaintiff] on September 5, 2022." *Id.* He claims that "other facts" show Major Marr's "role" in "facilitating" his "abuse" by Defendant Lancaster, including that Marr was a "close friend, if not family member or family friend" of Lancaster's. *Id.* ¶ 62. He goes on to allege that U.S. Congressman Troy Nehls, "acting as [Plaintiff's] agent," requested that the District release Lancaster's body-worn camera footage; the District failed to produce it, claiming alternately that no footage existed and that the District declined to release the footage; the District ultimately turned over the footage after Plaintiff filed a motion to compel, which he subsequently withdrew. *Id.* ¶¶ 64–69. Finally, Plaintiff alleges that "[a]t all times relevant to this lawsuit," the District "has maintained a policy of covering up abuse of inmates including the use of excessive force against inmates in Unit C2B (but not other inmates) who did not properly wear COVID-19 face masks." *Id.* ¶ 70.

## LEGAL STANDARD

Motions to dismiss brought under Fed. R. Civ. P. 12(b)(6) test the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d. 235, 242 (D.C. Cir. 2002). For a complaint to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)). "Threadbare recitals of

5

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id*.  While a court must generally consider a plaintiff's factual allegations as true, it is not

obligated to draw inferences in favor of the plaintiff "if such inferences are unsupported by

the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994).

**ARGUMENT**

**I.      Plaintiff's Section 1983 Claim Against the District Fails.**

Plaintiff's Section 1983 claim against the District fails and the District should be

dismissed because Plaintiff again fails to allege facts showing the District's municipal liability.  A

municipality is liable for its employees' constitutional violations only if those employees were

following municipal policy or custom, and that policy or custom caused the violation at issue.

*See* Order, ECF No. 16, at 17 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

658, 694 (1978)); *see also Inyangette v. Dep't of Motor Vehicles*, No. 24-CV-2584, 2025 WL

2718982, at *5 (D.D.C. Sept. 23, 2025) (plaintiff must establish "an 'affirmative link' between

the constitutional violation and the municipal policy or custom, 'such that [the] municipal policy

was the 'moving force' behind the constitutional violation'" (quoting *Baker v. District of

Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

"Courts 'have identified various ways in which a policy can be set' such that it triggers

municipal liability under § 1983."  *Thomas v. District of Columbia*, No. 21-CV-00584, 2021 WL

5769443, at *2 (D.D.C. Dec. 6, 2021) (quoting *Singletary v. District of Columbia*, 766 F.3d 66,

72 (D.C. Cir. 2014) (internal quotation marks omitted)).  "Generally speaking, such an official

policy exists when (1) the municipality adopts a policy that itself violates the Constitution; (2)

the unconstitutional action was taken by a "policy maker" within the government; (3) the

employees' unconstitutional actions "are so consistent that they have become [a] 'custom' " of

6

the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed "deliberate indifference" to that risk by failing to act." *Hurd v. District of Columbia,* 997 F.3d 332, 337 (D.C. Cir. 2021) (citing *Baker,* 326 F.3d at 1306).

To state a claim under § 1983, Plaintiff must identify the theory of municipal policy at issue *and* plead the elements of the applicable theory. *See Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) ("If the plaintiff fails to identify the type of municipal policy at issue, the court would be unable to determine, as required by *Iqbal*'s second step, whether the plaintiff had provided plausible support for her claim. Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role.").

Here, Plaintiff cannot proceed under any of the theories. To begin, because Plaintiff does not identify an explicit government policy that caused the alleged constitutional violation, he cannot proceed with his § 1983 claim under that theory of liability. *See Warren v. District of Columbia*, 353 F.,3d 36, 39 (D.C. Cir. 2024) (explaining that causation would exist if the municipality explicitly adopted the policy that was the "moving force of the constitutional violation" (citing *Monell,* 436 U.S. at 694). And for the reasons below, Plaintiff cannot proceed on any of the other theories of municipal liability, either.

A.    **Plaintiff Fails to Plead Facts Supporting Municipal Liability Under a Policymaker Theory.**

First, Plaintiff does not plead facts plausibly showing liability under a policymaker theory. Municipal liability under § 1983 attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986). Whether a person has final policymaking

7

authority is a question of state law, and courts have long held that "a final decision maker typically must be at least an agency head or the governing body of an agency." *Ryan v. District of Columbia,* 306 F. Supp. 3d 334, 342–43 (D.D.C. 2018) (citing *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011). Here, Plaintiff merely uses the term "policymaker" in reference to Major Marr and other unspecified policymakers. But Major Marr is not the agency head of the Department of Corrections. Plaintiff offers no facts plausibly showing that the constitutional deprivation alleged is properly attributable to a District policymaker because of their decisions or actions. *See, e.g., Pembauer*, 475 U.S. at 85. Accordingly, Plaintiff fails to state a plausible § 1983 claim under this theory.

**B.    Plaintiff Does Not Plausibly Plead the Adoption by a Policymaker Through a Knowing Failure to Act or Actions That Have Become Custom.**

Second, Plaintiff's allegation that the District "knowingly ignored the risk that an officer like Defendant Lancaster would use excessive force against an inmate and then seek to cover up the misuse as Major Marr had previously done" is insufficient to plausibly allege the District's municipal liability. *See* Compl. ¶ 86. To show adoption of a "custom" for establishing municipal liability through a knowing failure to act, a plaintiff must allege "a persistent, pervasive practice of the city officials, which although not officially adopted, was so common and settled as to be considered a custom or policy." *Tyson v. District of Columbia,* No. 20-CV-1450 (RC), 2021 WL 4860685, at *10 (D.D.C. Oct. 19, 2021) (cleaned up) (quoting *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 92–93 (D.D.C. 2011). This generally requires pleading "specific incidents that plausibly show a custom or pattern of behavior." *Wells v. Hense*, 235 F. Supp. 3d 1, 12 (D.D.C. 2017) (quoting *Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 87 (D.D.C. 2016)). "Pleadings that point to other specific incidents provide the

8

'factual heft' to corroborate the alleged custom and bolster the plausibility of the complaint." *Tyson*, 2021 WL 4860685, at *10 (citation omitted).

Here, Plaintiff alleges an assortment of actions by Lancaster, none of which involve the use of excessive force, let alone the use of a chemical agent. *See* Compl.¶¶ 12–15, 20  He alleges that Lancaster previously was "banned" from Unit C2B for unconstitutionally searching inmates in that unit; "taunting them"; "escalating confrontation with them";  and "arbitrarily locking them down"; and that she had "an established history of an inability to peaceably supervise" inmates in C2B and of "violating DOC security protocols," which "created a risk that, if she reentered C2B when she was banned from doing so, she would violate a detainee's constitutional rights."  *Id.* ¶¶ 12, 14.  He also alleges that detainees in Unit C2B filed grievances "making DOC aware of Defendant Lancaster's actions against them," but he does not elaborate on the substance of any such grievances.  And although he alleges that Major Marr also engaged in excessive force, he does not describe her actions or provide any related context, so this allegation cannot support municipal liability.  *See id.* ¶ 61; *Hardick v. District of Columbia*, No. 23-CV-2151 (TJK), 2024 WL 4286053, at *7 (D.D.C. Sept. 25, 2024) (holding that conclusory statement about unspecified incidents occurring over an unknown period under unclear circumstances was insufficient to plausibly allege municipal liability).[1]  Because these scattered incidents do not plausibly show a custom or pattern of behavior, Plaintiff cannot proceed with a municipal liability claim against the District under this theory either.  *See Anthony March II v.*

---

[1]    Additionally, because Plaintiff alleges "on information and belief" that Marr used excessive force "as a response to [an] inmate's failure to wear a COVID-19 mask," the Court should disregard this allegation since he does not provide any facts regarding the basis for these allegations.  *See Kowal,* 16 F.2d at 1279 n.3 (explaining pleading on information and belief requires alleging that the necessary information lies within the defendant's control and a statement of the facts upon which the allegation is based).

*District of Columbia*, No. 24-CV-683 (RDM), 2026 WL 836281 at *5 (D.D.C. Mar. 26, 2026) (holding that, where plaintiff only alleged his own and one other example of illegal stop and frisk policy, he failed to allege facts plausibly showing "a widespread practice that could indicate the District's deliberate condoning of wrongful conduct"); *accord Carter,* 795 F.2d at 123–25 (explaining that, although "[e]gregious instances of misconduct, relatively few in number but following a common design, may support an inference that the instances would not occur but for municipal tolerance of the practice in question," the "assorted actual instances of misconduct" did not constitute "a common or widespread pattern" sufficient to support § 1983 liability).

C.    **Plaintiff Fails to Plausibly Allege Deliberate Indifference.**

Finally, Plaintiff has not stated a claim of municipal liability under a deliberate indifference theory.  "Deliberate indifference is an objective standard that means that when a city is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'"  *Tyson*, 2021 WL 4860685, at *12 (quoting *Warren,* 353 F.3d at 39).  It is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To survive a motion to dismiss alleging Section 1983 liability under a failure to train or supervise theory, a plaintiff must allege that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997).

Here, Plaintiff offers two factual predicates for his deliberate indifference allegations, neither of which is persuasive.  *First*, he alleges that the District acted with deliberate indifference to the risk that "staffing Lancaster in Unit C2B when she had been banned there would result in her violating the constitutional rights of detainees in that unit . . . ."  Compl. ¶ 86.

10

*Second,* he alleges that the District failed to train or otherwise respond to Lancaster's "need for immediate correction" when her supervisors had "actual notice of her repeated and customary violations of security protocols." *Id.* Yet Plaintiff again fails to plead any facts about the District's training protocols regarding the lawful use of chemical agents or lack thereof, or plausibly show that the District was on notice that corrections officers would use a chemical agent against inmates in Unit C2B (or any other part of the Jail) in violation of their constitutional rights but nonetheless failed to supervise them adequately. *See* Order, ECF 16 at 18; *see also Runnymede-Piper v. District of Columbia*, 952 F. Supp. 2d 52, 58–59 (D.D.C. 2013) (explaining that, to survive a motion to dismiss under a failure to supervise or train theory, a complaint must allege *facts* demonstrating the defendant municipality's actual or constructive notice of deficiencies in its training, for example, through a pattern of similar unconstitutional conduct by untrained employees); *Davis v. District of Columbia,* 800 F. Supp. 2d 28, 35–36 (D.D.C. 2011) (dismissing complaint that failed to allege any similar occurrences showing a failure to train "for the situation they confronted in this case" and where plaintiff based her allegations "solely on this individual incident."). Therefore, Plaintiff fails to plausibly allege the District's municipal liability under this theory.

Because Plaintiff fails to show the District's municipal liability, the Court should dismiss Count III of the Second Amended Complaint and dismiss the District from this action with prejudice.

## CONCLUSION

For these reasons, the Court should grant the District's motion and dismiss Count III of the Second Amended Complaint with prejudice and, accordingly, dismiss the District from this action with prejudice.

11

Dated: April 23, 2026

Respectfully  submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Sarah Preis*
SARAH PREIS
Assistant Attorney General
400 Sixth Street, NW
Washington, D.C. 20001
(202) 727-5291
sarah.preis@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RONALD COLTON MCABEEE,

      *Plaintiff*,

  v.

DISTRICT OF COLUMBIA, *et al.*,     Civil Action No. 24-cv-01686 (JMC)

      *Defendants*.

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss the Second Amended Complaint, any opposition and reply thereto, and the entire record, it is this _____ day of _____ 2026, hereby

**ORDERED** that Defendant's Motion is **GRANTED**; and it is further

**ORDERED** that Count III of the Second Amended Complaint is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that Defendant District of Columbia is **DISMISSED WITH PREJUDICE** as a defendant in this action.

  **SO ORDERED**.

        _____
        JIA M. COBB
        United States District Judge